# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Martian Sales, Inc.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Food and Drug Administration, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 1:24-cv-03031-RBW |

## Defendants' Memorandum in Support of their Motion to Dismiss

OF COUNSEL:

PATRICIA ZETTLER
Deputy General Counsel
U.S. Department of Health and Human
　Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BURDEN H. WALKER
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director

HILARY K. PERKINS
Assistant Director

DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

   I.  Statutory background ................................................................................................. 2

   II.  Factual background .................................................................................................. 3

   III. Plaintiff's lawsuit .................................................................................................... 5

LEGAL STANDARD ............................................................................................................. 6

ARGUMENT ......................................................................................................................... 7

   I.  The Court lacks subject-matter jurisdiction .............................................................. 7

      A.  Plaintiff has not met its burden to establish standing .................................... 7

      B.  Plaintiff's claims are unripe because they do not challenge final agency
         action ............................................................................................................. 9

         1.  The Safety Alert is neither "agency action" nor "final agency action" ............... 10

         2.  Plaintiff has not suffered hardship sufficient to outweigh the interest
            in deferring judicial review ................................................................................ 16

   II.  Even if the Court has subject-matter jurisdiction, the Complaint alleges no
      plausible claim .......................................................................................................... 17

      A.  Count I fails to state a claim under the APA because it does not
         challenge "agency action" or "final agency action" .................................... 17

      B.  Count II fails to state a due process claim ................................................. 17

         1.  Plaintiff's claimed reputational injuries fail as a matter of law ........................... 17

         2.  The Safety Alert is not final agency action and does not implicate
            due process ........................................................................................................ 21

CONCLUSION ..................................................................................................................... 22

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| Ex. 1 | FDA Safety Alert dated July 26, 2024 (Compl. Ex. 34) |
| Heller Decl. | Declaration of Seth I. Heller |
| Ex. A | Email from FDA counsel to Plaintiff's counsel dated August 2, 2024 |
| Ex. B | Declaration of Mark Reilly in Support of Defendant Martian Sales Inc.'s Motion to Dismiss Pursuant to ORCP 21A(2), filed in *Estate of Daniel Scott Paul v. OPMS (a/k/a Optimized Plant Mediated Solutions)*, No. 21-cv-33403 (Or. Cr. Ct. Nov. 23, 2021) |
| Ex. C | Affidavit of Mark Reilly in Support of Motion to Dismiss, filed in *C.M. v. Martian Sales, Inc.*, No. 3:23-cv-0602, ECF No. 16-1 (N.D. Ca. Feb. 9, 2024) |

## TABLE OF AUTHORITIES

**Cases**

*Action All. of Senior Citizens v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986)................................................................................16

*Adams v. U.S. Capitol Police Bd.*,
    564 F. Supp. 2d 37 (D.D.C. 2008)............................................................................6

*Advance Am. v. FDIC*,
    No. 14-cv-953 (GK), 2017 WL 2672741 (D.D.C. Feb. 23, 2017) ..........................21

*Advance Mgmt. Tech., Inc. v. FAA*,
    211 F.3d 633 (D.C. Cir. 2000)..................................................................................8

*Aerosource v. Slater*,
    142 F.3d 572 (3d Cir. 1998) ................................................................................ 13

*In re Aiken Cty.*,
    645 F.3d 428 (D.C. Cir. 2011)..................................................................................6

*Am. Petroleum Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012)..................................................................................9

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015)....................................................................................6

*Arrow Reliance, Inc. v Califf*,
    No. 2:22-cv-1057, 2022 WL 18027595 (Dec. 30, 2022) ......................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................7

*Barr v. Matteo*,
    360 U.S. 564 (1959) ................................................................................................2

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................................13, 14

*Blue v. Dist. of Columbia*,
    811 F.3d 14 (D.C. Cir. 2015)....................................................................................7

*Carik v. HHS*,
    4 F. Supp. 3d 41 (D.D.C. 2013)................................................................................3

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................................................6

*Del. Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec.*,
    106 F.4th 1195 (D.C. Cir. 2024) ............................................................................17

*El-Shifa Pharm. Indus. Co. v. United States*,
    No. 01-cv-731 (RWR), 2007 WL 950082 (D.D.C. Mar. 28, 2007) ........................11

*Elec. Priv. Info. Ctr. v. IRS*,
  910 F.3d 1232 (D.C. Cir. 2018).............................................................15

*Ewing v. Mytinger & Casselberry*,
  339 U.S. 594 (1950) ..........................................................................21

*Exxon Mobil Corp. v. FERC*,
  501 F.3d 204 (D.C. Cir. 2007)..............................................................6

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................7

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ............................................................................2

*Flue-Cured Tobacco Coop. v. EPA*,
  313 F.3d 852 (4th Cir. 2002) ..........................................................13, 15

*Full Value Advisors, LLC v. SEC*,
  633 F.3d 1101 (D.C. Cir. 2011).............................................................6

*\*Gen. Elec. Co. v. Jackson*,
  610 F.3d 110 (D.C. Cir. 2010)...................................................18, 19, 20, 21

*Georator Corp. v. EEOC*,
  592 F.2d 765 (4th Cir. 1979) ..........................................................21, 22

*Harris v. McDonald*,
  No. 17-cv-594 (JEB), 2017 WL 4217101 (D.D.C. Sept. 19, 2017) .......................21

*Hearst Radio, Inc. v. FCC*,
  167 F.2d 225 (D.C. Cir. 1948)..............................................................10

*Hi-Tech Pharms., Inc. v. Hahn*,
  No. 19-cv-1268 (RBW), 2020 WL 3498588 (D.D.C. June 29, 2020) ..................16, 19, 21

*\*Holistic Candlers & Consumers Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012)......................................10, 13, 14, 16, 17

*Hoxsey v. Folsom*,
  155 F. Supp. 376 (D.D.C. 1957)..............................................................2

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004)..............................................................14

*\*Indus. Safety Equip. Ass'n, Inc. v. EPA*,
  837 F.2d 1115 (D.C. Cir. 1988).......................................11, 19, 20, 21

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ..........................................................13, 15

*Jake's Fireworks Inc. v. Consumer Prod. Safety Comm'n*,
  105 F.4th 627 (4th Cir. 2024) ..............................................................14

*Joshi v. Nat'l Transp. Safety Bd.*,
  791 F.3d 8 (D.C. Cir. 2015)..............................................................13, 15

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ................................................................................. 3, 7

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................................................. 12

*Mallinckrodt Inc. v. FDA*,
   No. 8:14-cv-03607 (DKC), 2015 WL 13091366 (D. Md. July 29, 2015) ............... 19

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State*,
   153 F. Supp. 3d 319 (D.D.C. 2016) ......................................................................... 6

*Mpoy v. Rhee*,
   758 F.3d 285 (D.C. Cir. 2014) ................................................................................. 5

*Mundo Verde Pub. Charter Sch. v. Sokolov*,
   315 F. Supp. 3d 374 (D.D.C. 2018) ......................................................................... 3

*NB ex rel. Peacock v. Dist. of Columbia*,
   794 F.3d 31 (D.C. Cir. 2015) ................................................................................... 17

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ............................................................................................. 9, 16

*Orton Motor, Inc. v. HHS*,
   884 F.3d 1205 (D.C. Cir. 2018) ............................................................................... 19

*Osicka v. Off. of Law. Regul.*,
   25 F.4th 501 (7th Cir. 2022) ..................................................................................... 10

*O'Donnell v. Barry*,
   148 F.3d 1126 (D.C. Cir. 1998) ............................................................................... 19

*Paul v. Davis*,
   424 U.S. 693 (1976) ............................................................................................. 18, 19

*Pfizer, Inc. v. Shalala*,
   182 F.3d 975 (D.C. Cir. 1999) ................................................................................. 9

*Phibro Animal Health Corp. v. FDA*,
   No. 24-cv-45 (JDB), 2024 WL 4564258 (D.D.C. Oct. 24, 2024) ........................... 16

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) ............................................................................. 14, 15

*Sadallah v. City of Utica*,
   383 F.3d 34 (2d Cir. 2004) ....................................................................................... 21

*Saline Parents v. Garland*,
   88 F.4th 298 (D.C. Cir. 2023) .............................................................................. 6, 16

*Scahill v. Dist. of Columbia*,
   909 F.3d 1177 (D.C. Cir. 2018) ............................................................................... 7

*Shaffer v. Def. Intel. Agency*,
   601 F. Supp. 2d 16 (D.D.C. 2009) ........................................................................... 16

*Shurtleff v. City of Boston*,
   596 U.S. 243 (2022) ............................................................................................2

*Siegert v. Gilley*,
   500 U.S. 226 (1991) ..........................................................................................18

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................6, 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ..........................................................................................6, 7

*Stevens v. InPhonic, Inc.*,
   662 F. Supp. 2d 105 (D.D.C. 2009) ....................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................5, 7

*Texas v. United States*,
   523 U.S. 296 (1998) ............................................................................................9

*Texas Low Income Hous. Info. Serv. v. Carson*,
   427 F. Supp. 3d 43 (D.D.C. 2019) ..........................................................6, 12, 15

*Townsend v. United States*,
   282 F. Supp. 3d 118 (D.D.C. 2017) ..................................................................18

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................7

*Trifax Corp. v. Dist. of Columbia*,
   314 F.3d 641 (D.C. Cir. 2003) ....................................................................20, 21

*Trudeau v. FTC*,
   384 F. Supp. 2d 281 (D.D.C. 2005) ......................................................11, 12, 13

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) ..........................................................................11

*Trump v. New York*,
   592 U.S. 125 (2020) ..........................................................................................16

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................................................7

*Vila v. Inter-Am. Inv., Corp.*,
   536 F. Supp. 2d 41 (D.D.C. 2008) ......................................................................5

*Wyo. Outdoor Council v. Dombeck*,
   148 F. Supp. 2d 1 (D.D.C. 2001) ......................................................................10

**Statutes**

5 U.S.C §
   551 ......................................................................................................................10
   551(10) ................................................................................................................10
   551(10)(c) ............................................................................................................10

551(13) ...............................................................................................................10, 12
704 .................................................................................................................................17
706(2) .............................................................................................................................17

21 U.S.C. §
372(a)(1) ..........................................................................................................................2
375(b) ...............................................................................................................................2
393(b) ...............................................................................................................................2
393(b)(2)(A) .....................................................................................................................2
393(b)(2)(B) .....................................................................................................................2

42 U.S.C. § 242o(b) ...............................................................................................................2

**Regulations and Rules**

21 C.F.R. § 10.75 .................................................................................................................15

Fed. R. Civ. P. 12(b)(1) ......................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1, 6, 7

Fed. R. Evid. 201 ...................................................................................................................3

**Other Authorities**

*C.M. v. Martian Sales, Inc.*, No. 3:23-cv-0602, ECF No. 16-1, Affidavit of Mark
    Reilly in Support of Motion to Dismiss (N.D. Cal. Feb. 9, 2024) ...............................8

*Estate of Daniel Scott Paul v. OPMS (a/k/a Optimized Plant Mediated Solutions)*,
    No. 21-cv-33403, Declaration of Mark Reilly in Support of Defendant Martian
    Sales Inc.'s Motion to Dismiss Pursuant to ORCP 21A(2) (Or. Cr. Ct. Nov. 23,
    2021) ..............................................................................................................................8

FDA, *FDA and Kratom* (last updated Aug. 5, 2024),
    https://www.fda.gov/news-events/public-health-focus/fda-and-kratom ..................3, 4

FDA, *FDA Announces Seizure of Adulterated Dietary Supplements Containing
    Kratom* (May 21, 2021),
    https://www.fda.gov/news-events/press-announcements/fda-announces-
    seizure-adulterated-dietary-supplements-containing-kratom ...................................11

FDA, *FDA Roundup: May 5, 2023*,
    https://www.fda.gov/news-events/press-announcements/fda-roundup-may-05
    -2023 .............................................................................................................................11

FDA, *FDA Staff Manual Guides, Vol II – Delegations of Authority*, SMG 1410.10,
    (Feb. 22, 2023),
    https://www.fda.gov/media/81983/download ...............................................................2

FDA, *Kratom seized in California by US Marshals Service* (Aug. 4, 2016),
    https://www.fda.gov/news-events/press-announcements/kratom-seized-
    california-us-marshals-service ....................................................................................11

*Fine*, Black's Law Dictionary (11th ed. 2019) ..............................................................................10

OPMS, *O.P.M.S. Kratom Products* (last visited Dec. 22, 2024),
    https://opmskratom.com/opms-black-liquid-auth/ ....................................................................4

**INTRODUCTION**

Plaintiff Martian Sales, Inc. challenges an FDA safety communication about one of Plaintiff's products, OPMS Black Liquid Kratom (OPMS Black Liquid), which is a liquid extract manufactured from kratom leaves. Kratom is a tropical tree whose leaves contain chemical compounds that bind to the same receptors in the brain as opioid drugs. On July 26, 2024, FDA, consistent with the agency's mission to protect the public health, issued a "Safety Alert" to alert the public to reports of serious adverse events that the agency had received about individuals who consumed OPMS Black Liquid. Although the Safety Alert identified potential adverse health effects and recommended against the product's use, it had no legal effect and did not purport to impose any obligations on Plaintiff or anyone else.

Plaintiff claims that FDA's communication violated the Administrative Procedure Act (APA) and the Fifth Amendment's Due Process Clause because the agency allegedly intended to punish the company by publishing a "demonstrably false" statement. FDA's Safety Alert, Plaintiff argues, has caused reputational harm and a drop in sales of OPMS Black Liquid.

Plaintiff has not met its burden of establishing this Court's subject-matter jurisdiction for any of its claims. At the outset, Plaintiff has not demonstrated that it has Article III standing. The Complaint fails to allege facts showing how, as the trademark owner for OPMS Black Liquid, Plaintiff has suffered concrete reputational injury in the form of an alleged decrease in sales of that product. Plaintiff's claims are also prudentially unripe. Administrative conduct is not fit for review unless and until it reaches the status of "final agency action," and the challenged Safety Alert is neither an "agency action" nor a "final agency action" under the APA. The Safety Alert did not consummate any internal decision-making process or determine any rights or obligations. The Safety Alert also did not deprive Plaintiff of a liberty or property interest protected by the Due Process Clause. Thus, there is no dispute ripe for this Court's determination, and this case should be dismissed under Rule 12(b)(1).

Apart from a lack of subject-matter jurisdiction, Rule 12(b)(6) also requires dismissal of Plaintiff's claims. Because no final agency action exists, Plaintiff cannot satisfy a fundamental

element of an APA claim. Plaintiff's due process claim likewise fails because its purported harms flow solely from alleged injury to its reputation, not to a requisite legal status or right. Accordingly, this case should be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.  Statutory background

Congress charged FDA with "protect[ing] the public health by," among other things, "ensuring that foods are safe, wholesome, sanitary, and properly labeled," and that "human … drugs are safe and effective." 21 U.S.C. § 393(b)(2)(A)–(B); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133–34 (2000). In furtherance of that mission, the Federal Food, Drug, and Cosmetic Act (FDCA) authorizes FDA to "conduct examinations and investigations." 21 U.S.C. § 372(a)(1). FDA also has inherent authority to communicate information to the public. *See Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) ("When the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say. That must be true for government to work.") (internal citation omitted); *Hoxsey v. Folsom*, 155 F. Supp. 376, 378 (D.D.C. 1957) (holding that FDA can "disseminate information" about plaintiff's products "even without statutory authority"); *cf. Barr v. Matteo*, 360 U.S. 564, 574–75 (1959) (plurality opinion) (finding implicit authority for public officials to make a "public statement of agency policy in respect to matters of wide public interest and concern"). Provisions in the FDCA and the Public Health Service Act (PHSA) confirm FDA's authority to disseminate information. *See, e.g.,* 21 U.S.C. §§ 375(b), 393(b); 42 U.S.C. § 242o(b).[1]

---

[1] The Secretary of Health and Human Services has redelegated to the Commissioner of Food and Drugs functions vested in the Secretary under Section 242o(b) of the PHSA to issue information related to health for the use of the public and other pertinent health information for the use of persons and institutions concerned with health services when such information is related to the functions of FDA. FDA, *FDA Staff Manual Guides, Vol II – Delegations of Authority*, SMG 1410.10, Sec. 1.A, ¶ 22 (Feb. 22, 2023), https://www.fda.gov/media/81983/download.

## II.  Factual background

Plaintiff alleges that it is the trademark owner of OPMS, a brand of kratom-containing products sold as food. *See* ECF No. 1 (Compl.) ¶¶ 3–4. Kratom is a tropical tree (*Mitragyna speciosa*) native to Southeast Asia, and its leaves are used in certain products sold in the United States. *Id.* ¶¶ 11, 13. Kratom contains two main chemical compounds (called alkaloids), mitragynine and 7-OH-mitragynine, both of which bind to the same receptors in the brain as opioid drugs, such as codeine. *See* Compl. Ex. 3 at 1; *see also* Compl. ¶ 19 (alleging that recent studies link mitragynine to "anti-addiction properties because of how this alkaloid binds to dopamine receptors in the brain"); FDA, *FDA and Kratom*, https://www.fda.gov/news-events/public-health-focus/fda-and-kratom (last updated Aug. 5, 2024).[2] Some individuals use kratom to self-treat conditions such as pain, anxiety and depression, opioid use disorder, and opioid withdrawal. *See* Compl. Ex. 2 at 1–5; Compl. Ex. 3 at 5; Compl. Ex. 4 at 2, 5–6; *FDA and Kratom*. But FDA has not approved kratom (or its two main chemical compounds) for use in any lawfully marketed drug product. *See FDA and Kratom*. And as a general matter, the agency has "warned consumers not to use kratom because of the risk of serious adverse events." *Id.*

Plaintiff alleges that its OPMS brand kratom products are available for sale in the United States "as food." Compl. ¶ 3. One of those products, OPMS Black Liquid, is the subject of the Safety Alert at issue in this case. Plaintiff touts that OPMS Black Liquid is a liquid extract from kratom leaves manufactured using an extraction process that captures the "full spectrum alkaloid profile found in the kratom leaf." *Id.* ¶ 38. According to the OPMS Kratom website, the "mitragynine and other alkaloid content" in OPMS Black Liquid "are multiple times greater than

---

[2] For purposes of a motion to dismiss, the Court may properly take judicial notice of FDA's publicly available records and information on the agency's website. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (considering for purposes of motion to dismiss, "public records subject to judicial notice," among other things); *Carik v. HHS*, 4 F. Supp. 3d 41, 48 n.4 (D.D.C. 2013) (taking judicial notice of information on FDA's website). The Court also may take judicial notice of the existence of statements on the OPMS Kratom website. *See Mundo Verde Pub. Charter Sch. v. Sokolov*, 315 F. Supp. 3d 374, 382 n.3 (D.D.C. 2018) (taking "judicial notice of representations made on Plaintiff's website" because they were facts "'not subject to reasonable dispute'" in that they were "'generally known within the trial court's territorial jurisdiction" and "'c[ould] be accurately and readily determined from sources whose accuracy cannot reasonabl[y] be questioned'") (quoting Fed. R. Evid. 201).

that of raw kratom leaf, resulting in an increased potency….” OPMS, *O.P.M.S. Kratom Products*, https://opmskratom.com/opms-black-liquid-auth/ (last visited Dec. 22, 2024). The website tells prospective customers to “[t]reat accordingly and proceed with enhanced caution” and that “[u]sing Mitragyna Speciosa can be dangerous.” *Id.* It also discloses, “[t]here have been reports of adverse health effects associated with using kratom products,” and it disclaims, “[b]y using this product, you accept full responsibility for the use of this product, including … any adverse events or health complications that may arise from use.” *Id.*

On July 26, 2024, FDA issued a Safety Alert concerning OPMS Black Liquid. *See* Compl. ¶ 4 and Ex. 34 (also attached hereto as Ex. 1). FDA “advis[ed] consumers not to consume OPMS Black Liquid Kratom” and stated that the product “has been linked to serious adverse health effects, including death.” Ex. at 1. The Safety Alert elaborated that FDA had “recently received an adverse event report of a person who died after using OPMS Black Liquid Kratom,” which was just “one of many reports of serious adverse events individuals have reported experiencing after consuming” the product. *Id.* at 1–2. “Other reported adverse health effects,” the agency stated, “include withdrawal symptoms, addiction, digestive issues, restless leg syndrome, skin problems, aggressive behavior, increased anxiety, lack of energy, and inability to focus.” *Id.* at 2. The Safety Alert advised that “FDA is investigating” these adverse event reports. *Id.*

FDA also noted its concerns about kratom generally, not specific to any product. It observed that “products containing kratom have been marketed as foods, including dietary supplements, or [as] drugs with claims of therapeutic benefit,” and that “consumers may believe kratom products are safe because kratom is a plant material and is available online and in some retail stores.” *Id.* Reiterating prior warnings, *see, e.g.*, *FDA and Kratom*, FDA reminded consumers that it “continues to warn consumers not to use kratom because of the risk of serious adverse events, including liver toxicity, seizures, and substance use disorder,” Ex. 1 at 2.

Following issuance of the Safety Alert, FDA and Plaintiff exchanged communications about the agency’s investigation into the events discussed in the Safety Alert. *See* Compl. ¶¶ 51, 53, 58.

4

On August 2, 2024, FDA counsel emailed counsel for Plaintiff, explaining that a "January 15, 2024 autopsy report indicated that an individual died from accidental acute mitragynine intoxication," and that FDA learned "that the decedent had purportedly been using your OPMS Black Liquid Kratom products before his death." Heller Decl. Ex. A at 1; *see* Compl. ¶ 58.[3] FDA counsel further stated that "FDA's investigatory steps included, but were not limited to, review of the medical examiner's conclusions and autopsy results." Heller Decl. Ex. A at 1. As part of that investigation, FDA advised, it had contacted the telephone number and email address listed on the OPMS Black Liquid packaging on May 31, 2024, but it received no response before issuing the Safety Alert on July 26, 2024. *Id.* at 1–2. The email also emphasized that the agency was "still investigating adverse events related to [OPMS Black Liquid]" and specifically noted that FDA was "still await[ing] information" it had requested from Plaintiff and planned to "fully consider" as part of its investigation. *Id.* "[T]o the extent [Plaintiff] disagreed with any statements in FDA's safety alert," the agency invited Plaintiff to "identify any such statements and the basis for [its] disagreement." *Id*. at 2–3

### III. Plaintiff's lawsuit

On October 23, 2024, Plaintiff filed a two-count complaint challenging FDA's Safety Alert. *See* ECF No. 1. The Complaint alleges that FDA intended "to single out and punish" Plaintiff by issuing an "entirely unfounded" Safety Alert that "FDA has no evidence to support" and which the agency "refuses to further consider." Compl. ¶¶ 48, 57. Plaintiff asserts that the Safety Alert caused reputational "damage to its brand and goodwill," "result[ed] [in] significant loss of sales," and "deprived [it] of significant revenue." *Id*. ¶¶ 50, 69. Plaintiff further contends that the Safety Alert was a "sanction" that violated the APA (Count I) and the Fifth Amendment's Due Process

---

[3] In paragraph 58 of its Complaint, Plaintiff expressly refers to and quotes from the August 2, 2024 email. The email is therefore "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and the Court may properly consider it, *see Mpoy v. Rhee*, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014) (affirming district court's consideration of email that the complaint referenced but did not attach); *Vila v. Inter-Am. Inv., Corp.*, 536 F. Supp. 2d 41, 45–46 (D.D.C. 2008) (considering, on a motion to dismiss, emails "referenced and quoted" in the complaint), *aff'd and remanded*, 570 F.3d 274 (D.C. Cir. 2009).

Clause (Count II). *Id*. ¶¶ 61–73. As a remedy, Plaintiff seeks a declaration that FDA's Safety Alert was unlawful and a permanent injunction requiring FDA to remove the Safety Alert from its website or revise the statement's content.

### LEGAL STANDARD

Subject-matter jurisdiction must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Court is "presume[d]" to "lack jurisdiction" unless the plaintiff meets its "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotations omitted). Rooted in Article III's extension of the judicial power only to cases and controversies, the standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Ripeness, along with the prohibition against advisory opinions," also "stems from the constitutional case or controversy requirement," *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1106 (D.C. Cir. 2011), and the Court lacks subject-matter jurisdiction if the plaintiff's claims are not ripe, *Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007).[4] On a motion under Rule 12(b)(1), the Court accepts the complaint's "well-pleaded factual allegations" and any reasonable inferences drawn therefrom, but it does "not assume the truth of legal conclusions" or "accept inferences that are not supported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "Additionally, '[t]he court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion because subject-matter jurisdiction focuses on the court's power to hear the claim.'" *Texas Low Income Hous. Info. Serv. v. Carson*, 427 F. Supp. 3d 43, 52 (D.D.C. 2019) (quoting *Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008)).

---

[4] Alternatively, some courts have considered questions of prudential ripeness under Rule 12(b)(6) rather than Rule 12(b)(1). *See, e.g.*, *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 331 n.9 (D.D.C. 2016) (quotation omitted). But "even in its prudential aspect,'" ripeness remains "'a threshold inquiry that does not involve adjudication on the merits.'" *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (quoting *In re Aiken Cty.*, 645 F.3d 428, 434 (D.C. Cir. 2011)), *cert. denied*, No. 23-1135, 2024 WL 4426566 (U.S. Oct. 7, 2024).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plausibility standard applies to each element for each claim for relief. *See Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). Plausibility demands more than allegations "that are merely consistent with a defendant's liability" or that establish only "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 679 (quotation omitted). Nor must a court "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Scahill v. Dist. of Columbia*, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (*quoting Kaempe*, 367 F.3d at 963); *see Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 111 (D.D.C. 2009) ("On a motion to dismiss, [a] Court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Tellabs*, 551 U.S. at 322).

## ARGUMENT

## I. The Court lacks subject-matter jurisdiction

### A. Plaintiff has not met its burden to establish standing

"Article III standing is a 'bedrock constitutional requirement....'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). To establish standing, Plaintiff "must clearly allege facts demonstrating each element" of standing, *Spokeo*, 578 U.S. at 338 (cleaned up), namely: (1) an injury in fact that is "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) likely "redressable by a favorable ruling," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff must establish standing "for each claim" and "each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Here, Plaintiff has not demonstrated the "[f]irst and foremost" element of standing: injury in fact. *Steel*, 523 U.S. at 103. Plaintiff alleges that the Safety Alert caused reputational "damage to

its brand and goodwill," which has "result[ed] [in] significant loss of sales" and "deprived [it] of significant revenue." Compl. ¶¶ 50, 69. Apart from the purported drop in sales revenue, Plaintiff offers "no allegations" of the Safety Alert's "present or future consequences" on its reputation. *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000). Plaintiff also does not allege any facts demonstrating that it has a right to receive revenue from the sale of OPMS Black Liquid such that a decrease in sales would harm it. Instead, Plaintiff merely asserts that it is "the owner of the O.P.M.S. brand trademark," Compl. ¶ 4, and that it "offers its kratom products for sale as food," *id.* ¶ 3. Conspicuously absent are any facts demonstrating how a purported drop in sales injures Plaintiff in its capacity as trademark owner.

Plaintiff's filings in separate litigation suggest that it does not market OPMS Black Liquid and does not share in the sales revenue. In connection with a wrongful death suit in 2021, Plaintiff filed a declaration stating that it had "licensed the exclusive right to use the O.P.M.S. trade names and marks to a third party for use in connection with products manufactured, distributed or sold by that third party." *Estate of Daniel Scott Paul v. OPMS (a/k/a Optimized Plant Mediated Solutions)*, No. 21-cv-33403, Declaration of Mark Reilly in Support of Defendant Martian Sales Inc.'s Motion to Dismiss Pursuant to ORCP 21A(2) ¶ 4 (Or. Cr. Ct. Nov. 23, 2021) (attached hereto as Heller Decl. Ex. B). Plaintiff attached a copy of a licensing agreement, which called for Plaintiff to receive "a Royalty Fee of USD $1,000,000.00" due "upon the sooner of the Termination of this Agreement or once every ten (10) years." *Id.,* Ex. 1 at 1. Apart from the $1 million flat fee, the agreement does not appear to provide for any other payments to Plaintiff, such as a percentage of sales proceeds. *See id*. The declaration also ruled out other potential income streams related to OPMS, stating that Plaintiff "does not … manufacture, market, distribute or sell, or participate in any other party's manufacture, marketing, distribution or sale of, O.P.M.S. brand kratom products." Heller Decl. Ex. B ¶ 4. In early 2024, in a separate wrongful death suit, Plaintiff again declared that it "does not directly sell products to individuals" and contracts with "a singular … distributor." *C.M. v. Martian Sales, Inc.*, No. 3:23-cv-0602, ECF No. 16-1, Affidavit of Mark Reilly in Support of Motion to

Dismiss ¶¶ 11, 14 (N.D. Cal. Feb. 9, 2024) (attached hereto as Heller Decl. Ex. C). If the same is true today, then a drop in sales of OPMS Black Liquid would not inflict a concrete injury on Plaintiff.

Plaintiff's allegations in the Complaint give no reason to think that circumstances have changed since it filed those declarations. In particular, the Complaint does not allege facts demonstrating that reputational harm and an attendant drop in sales of OPMS Black Liquid has caused Plaintiff a concrete injury. As such, Plaintiff has failed to carry its burden to establish Article III standing, and this Court should dismiss the Complaint for lack of subject-matter jurisdiction.

### B.  Plaintiff's claims are unripe because they do not challenge final agency action

Ripeness is a justiciability doctrine that "generally deals with when a federal court can or should decide a case." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). "[T]he ripeness requirement serves 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Pfizer, Inc. v. Shalala*, 182 F.3d 975, 978 (D.C. Cir. 1999) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (quotation marks omitted)). Accordingly, "[r]ipeness entails a functional, not a formal, inquiry." *Id.* at 980.

To assess prudential ripeness, "a court must 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)). Here, the issues are not fit for review because Plaintiff does not challenge "agency action" or "final agency action." And even if the Court were to assess the "hardship" prong (which it need not), the challenged Safety Alert does not affect Plaintiff's legal rights or require it to take or refrain from taking any action, so any purported

hardship on Plaintiff's part would not outweigh the institutional interest in deferring judicial review.

### 1. The Safety Alert is neither "agency action" nor "final agency action"

"Although both the fitness and hardship prongs encompass a number of considerations, a dispute is not ripe if it is not fit," and a challenge to administrative agency action "is not fit if it does not involve final agency action." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012); *see Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 8 (D.D.C. 2001) ("A claim involving an administrative agency action is ripe only when the agency action is final."). Because a non-binding press release like the Safety Alert is not "agency action," much less "final agency action," Plaintiff's APA and due process claims are unfit and thus unripe.

***No "agency action."*** The APA defines "agency action" to mean a "rule, order, license, sanction, relief, or equivalent or denial thereof, or the failure to act," 5 U.S.C. § 551(13), and the statute further defines each of those terms, *see id.* § 551. The only potential "agency action" that Plaintiff identifies is FDA's July 26, 2024 Safety Alert, *see* Compl. ¶¶ 50, 58, 63, which Plaintiff erroneously claims to be a "sanction," *id.* ¶¶ 1, 45, 60, 64, 69–71. D.C. Circuit precedent forecloses Plaintiff's arguments.

Less than two years after the APA was enacted, the D.C. Circuit squarely held that an agency's publication of information—even information causing reputational harm to a business—is not a "sanction" under the APA. *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). In *Hearst Radio*, the Court explained that the APA's definition of sanction, which encompasses "compulsory or restrictive action[s]" like the "assessment of damages" or "revocation or suspension of a license," 5 U.S.C § 551(10), "obviously does not cover an act such as the publication of [a non-binding agency report]," 167 F.2d at 227.[5] Although some later

---

[5] Plaintiff asserts in passing that FDA effectively imposed a "fine" by "damag[ing] O.P.M.S.'s brand" and "depriv[ing]" Plaintiff of "significant revenue." Compl. ¶ 69; *see* 5 U.S.C § 551(10)(c). Nothing in the Complaint suggests that FDA imposed "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." *Osicka v. Off. of Law. Regul.*, 25 F.4th 501, 506 (7th Cir. 2022) (quoting *Fine (5)*, Black's Law Dictionary (11th ed. 2019)).

decisions have questioned *Hearst Radio*'s "absolute immunity rule for agency publications" and suggested that judicial review "might" be available in certain cases, *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1118–19 (D.C. Cir. 1988), the D.C. Circuit has never overruled *Hearst Radio*, *see Trudeau v. FTC*, 456 F.3d 178, 189 (D.C. Cir. 2006). Accordingly, Circuit precedent requires dismissal of Plaintiff's claims. *See also El-Shifa Pharm. Indus. Co. v. United States*, No. 01-cv-731 (RWR), 2007 WL 950082, at \*1 (D.D.C. Mar. 28, 2007) ("numerous courts have rejected classifying [agencies' allegedly] defamatory statements as sanctions based on the APA's definition") (citing *Trudeau*, 456 F.3d at 189).

Even the cases holding out the theoretical possibility that a press release like the Safety Alert could amount to a "sanction" would require "evidence" that (1) the agency is "intent on penalizing" a private party or (2) the information in the press release is "demonstrably or concededly false." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) (citing *Indus. Safety*, 837 F.2d at 1119), *aff'd on other grounds*, 456 F.3d 178 (D.C. Cir. 2006). Plaintiff offers no such evidence. First, it alleges that FDA's "intent to single out and punish Martian Sales" is shown by the agency's "damaging accusations" against the company. *Id.* ¶ 42; *see id.* ¶ 48 (similar).[6] But "adverse impact alone," unaccompanied by any "destruction … of property or revocation … of a license," is insufficient to establish an agency's purported intent to penalize a party. *Indus. Safety*, 837 F.2d at 1119) (quotation marks omitted); *see Trudeau*, 384 F. Supp. 2d at 291 ("the fact that the press release … describ[es] the plaintiff and his marketing in negative terms" does not establish intent). Moreover, the Safety Alert stated its purpose explicitly: "The FDA is issuing this safety alert to warn consumers about serious adverse health effects associated

---

[6] Plaintiff's allegation that "FDA has not initiated a recall, halted sales, or taken any other action in relation to any kratom products–with the exception of the July Warning," Compl. ¶ 59, is contradicted by its own exhibit as well as press releases of which this Court can take judicial notice. *See* Compl. ¶ 41 n.23 and Ex. 35 (press release announcing a civil seizure action of a kratom product); *see also, e.g.*, *FDA Roundup: May 5, 2023* (describing seizure of kratom products manufactured by Botanic Tonics LLC), https://www.fda.gov/news-events/press-announcements/fda-roundup-may-05-2023; *FDA Announces Seizure of Adulterated Dietary Supplements Containing Kratom* (May 21, 2021), https://www.fda.gov/news-events/press-announcements/fda-announces-seizure-adulterated-dietary-supplements-containing-kratom; *Kratom seized in California by US Marshals Service* (Aug. 4, 2016), https://www.fda.gov/news-events/press-announcements/kratom-seized-california-us-marshals-service.

with OPMS Black Liquid Kratom." Ex. 1 at 2. Rather than seeking to "punish Martian Sales," Compl. ¶ 63, the Safety Alert did not even identify Plaintiff by name or mention any other OPMS kratom products, *see* Ex. 1.

Plaintiff next speculates that the Safety Alert is "demonstrably false" and was "issued absent investigation" because: (1) Plaintiff allegedly has not received "data and information" sufficient to "mollify" its "concerns" about the Safety Alert, Compl. ¶¶ 46, 49; *see also id.* ¶¶ 42, 51–54, 57–58; and (2) an unnamed employee of FDA allegedly told an unnamed employee of a third-party distributor that "the [Safety Alert] was based on an anonymous call to FDA and FDA actually had no specific information associating O.P.M.S. Black to the death," *id.* ¶ 47. Even at the motion to dismiss stage, these assertions are insufficient support for Plaintiff's claims. The first does not bear at all on the Safety Alert's accuracy. And the latter, even were such a statement made, would not on its own show that the Safety Alert is false, let alone "demonstrably" or "concededly" false. *See Trudeau*, 384 F. Supp. 2d at 290.

These allegations also do not withstand "closer scrutiny," *Texas Low Income Hous.*, 427 F. Supp. 3d at 52, particularly when viewed in light of the August 2, 2024 email that the Complaint quotes, *see* Compl. ¶ 58; Heller Decl. Ex. A. There, FDA counsel explained to Plaintiff's counsel that the agency's "investigatory steps" included "reviewing the medical examiner's conclusions and autopsy results," and that the agency had learned "that the decedent had purportedly been using [Plaintiff's] OPMS Black Liquid Kratom product before his death." Heller Decl. Ex. A. at 1. Given that FDA made these representations to Plaintiff before it commenced this lawsuit, it is unclear what basis, if any, Plaintiff had to allege that the Safety Alert is demonstrably false or that FDA conducted no investigation. Plaintiff thus falls far short of showing that the Safety Alert was a "sanction" or other type of "agency action."

***No "final" agency action.*** Even if FDA's public statement were an "agency action" within the meaning of section 551(13), Plaintiff also must show it is "final agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). An "agency action" is "final" only when it (1) "mark[s] the consummation of the agency's decision-making process" and (2) is an action

"by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and quotation marks omitted).

Courts have repeatedly held that agency press releases such as the Safety Alert are not final agency action. *See, e.g.*, *Trudeau*, 384 F. Supp. 2d at 289 ("No court has ever found a press release to be a final agency action under the APA."). More broadly, agency statements, warning letters, reports, opinions, and other publications are not final agency actions under the APA. *See Holistic Candlers*, 664 F.3d at 945 n.6 (collecting cases); *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (investigative report identifying pilot as the likely cause of accident); *Invention Submission Corp. v. Rogan*, 357 F.3d 452 (4th Cir. 2004) (Patent and Trademark Office advertising campaign alerting consumers to invention promotion scams); *Flue-Cured Tobacco Coop. v. EPA*, 313 F.3d 852, 854 (4th Cir. 2002) (EPA report classifying environmental tobacco smoke as a carcinogen); *Aerosource v. Slater*, 142 F.3d 572, 581 (3d Cir. 1998) (FAA reports warning aviation community that the plaintiff may have improperly maintained aircraft parts).

*Holistic Candlers* is instructive. There, FDA issued public warning letters to ear candle manufacturers and distributors advising them that FDA considered their products to be adulterated and misbranded. 664 F.3d at 942. After some recipients challenged the letters in court, the D.C. Circuit concluded that they were not final agency action. *Id.* at 943. First, while the warning letters stated that "[f]ailure to promptly correct these deviations [from the law] may result in regulatory action being initiated," *id.* at 942, they did not mark the "consummation" of FDA's decision-making process because they were informal, advisory, and did not commit the agency to taking enforcement action, *id.* at 944. Second, the letters did not "represent a decision determining rights or obligations, or one from which legal consequences flow," because they simply "communicate[d] the agency's position on a matter" and did not "compel[] action" by either the recipients or the agency. *Id.* The Court's analysis in *Holistic Candlers* shows that the Safety Alert at issue here is not final agency action.

FDA's Safety Alert does not reflect the consummation of a decision-making process. Nothing in the Safety Alert committed FDA to take any enforcement or other action. *See id.* at

13

944–45; *Jake's Fireworks Inc. v. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 632 (4th Cir. 2024) (holding that a "notice of noncompliance" did not consummate agency process because it "d[id] not trigger any of the administrative, civil, or criminal proceedings that the [agency] could pursue"). Indeed, unlike the warning letters at issue in *Holistic Candlers*, the Safety Alert did not mention Plaintiff or state that OPMS Black Liquid may be subject to "regulatory action." 664 F.3d at 942; *see* Compl. ¶ 49 (acknowledging that FDA did not "request[] any market action by Martian Sales"). The Safety Alert itself stated that FDA was still "investigating" the underlying adverse events, Ex. 1 at 2, and, sure enough, the agency subsequently requested additional information from Plaintiff and asked it to "identify" any statements in the Safety Alert with which it "disagree[d]," Heller Ex. A at 2–3; *see Holistic Candlers,* 664 F.3d at 944–45 (considering, in addition to challenged warning letter, statements agency made on its website and in meeting). None of this suggests that FDA had consummated any process, and Plaintiff fails to meet *Bennett*'s first prong.

The Safety Alert also did not determine "rights or obligations" or create "legal consequences." *Bennett*, 520 U.S. at 178. Plaintiff does not (and could not plausibly) allege that the Safety Alert "imposes an obligation, denies a right, or fixes some legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (holding that agency's investigation and preliminary findings regarding a product were not final agency action). The Safety Alert "d[id] not command any action," *Jake's Fireworks*, 105 F.4th at 633, and it "contains no findings and conclusions of law that determine [Plaintiff] violated any law," *Arrow Reliance, Inc. v Califf*, No. 2:22-cv-1057, 2022 WL 18027595, at *5 (Dec. 30, 2022) (holding that FDA press release was not final agency action). In short, the Safety Alert "had no binding effect whatsoever—not on the agency and not on the regulated community." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (holding that an EPA advice letter was not final agency action).

Plaintiff nonetheless contends that the Safety Alert is final agency action because it allegedly caused "damages to [Plaintiff's] brand and goodwill and resulting significant loss of

sales." Compl. ¶ 50; *see id.* ¶ 45 (alleging that "adverse publicity" is final agency action). To be sure, the Safety Alert recommends that consumers not consume OPMS Black Liquid. *See* Ex. 1 at 1–2. But the D.C. Circuit has rejected the notion that "practical" consequences of an agency publication, such as reputational harm or voluntarily changing business practices in response to a finding, are sufficient to state a claim under the APA. *Joshi*, 791 F.3d at 12; *Reliable Automatic Sprinkler*, 324 F.3d at 732; *see also Flue-Cured Tobacco*, 313 F.3d at 861 (holding that EPA report was not final agency action because, "while the Report's persuasive value may lead private groups to impose tobacco-related restrictions, these decisions are attributable to independent responses").[7] At most, Plaintiff's vague and conclusory allegations of injury are the "practical" fallout of the Safety Alert, not "legal" consequences. And "unless the [agency]'s actions result in a *legal* consequence, [courts] lack the power to review them." *Joshi*, 791 F.3d at 12 (emphasis added).

Plaintiff also insists that the Safety Alert is final agency action because it "has exhausted all efforts to obtain information from FDA," Compl. ¶ 58, and "has no legal recourse except in this Court," *id.* ¶¶ 60, 71; *see also id.* ¶ 57 (alleging that FDA "refuses to further consider its action or engage with Martian Sales"). Plaintiff's allegations are wrong and irrelevant. If Plaintiff is dissatisfied with the pace of FDA's response to its FOIA request, *id.* ¶ 52, its remedy lies in FOIA, *not* the APA, *see, e.g.*, *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (dismissing APA claim because FOIA provided adequate remedy). Beyond FOIA, Plaintiff may request internal agency review of the Safety Alert under 21 C.F.R. § 10.75. And as described above, Plaintiff's assertion that FDA is unwilling to further consider the underlying facts is unsupported and inconsistent with documents referenced in the Complaint and therefore does not withstand "closer scrutiny." *Texas Low Income Hous.*, 427 F. Supp. 3d at 52. Finally, irrespective

---

[7] As the Fourth Circuit observed, if the accuracy of agency statements could be challenged based on their persuasive effect, "almost any agency policy or publication issued by the government would be subject to judicial review." *Flue-Cured Tobacco*, 313 F.3d at 861. Congress did not intend "to create private rights of action to challenge the inevitable objectionable impressions created whenever controversial research by a federal agency is published." *Invention Submission*, 357 F.3d at 459 (quoting *Flue-Cured Tobacco*, 313 F.3d at 861).

of any other available remedies, absent final agency action, Plaintiff's claims are unfit and should be dismissed as unripe. *See Holistic Candlers*, 664 F.3d at 943.

### 2. Plaintiff has not suffered hardship sufficient to outweigh the interest in deferring judicial review

Because the Safety Alert "do[es] not constitute final agency action," it is "unnecessary" for the Court "to consider the remainder of the ripeness inquiry." *Hi-Tech Pharms., Inc. v. Hahn*, No. 19-cv-1268 (RBW), 2020 WL 3498588, at *5 n.4 (D.D.C. June 29, 2020) (quoting *Holistic Candlers*, 664 F.3d at 943). To the extent the Court engages in further analysis, we have already shown that Plaintiff fails to allege facts demonstrating injury from a significant loss in sales of OPMS Black Liquid, *see* Part I.A, and it similarly "has not provided 'concrete evidence' that it faces reputational harm," *Phibro Animal Health Corp. v. FDA*, No. 24-cv-45 (JDB), 2024 WL 4564258, at *7 (D.D.C. Oct. 24, 2024) (quoting *Shaffer v. Def. Intel. Agency*, 601 F. Supp. 2d 16, 25 (D.D.C. 2009)), *appeal filed* (Dec. 20, 2024).

More broadly, Plaintiff will not suffer significant "concrete harm" absent immediate judicial review because the Safety Alert "does not require [it] 'to do anything or to refrain from doing anything.'" *Trump v. New York*, 592 U.S. 125, 134 (2020) (quoting *Ohio Forestry*, 523 U.S. at 733). OPMS Black Liquid remains on the market. The Safety Alert does not "proscribe[] any activity" or "threat[en]" Plaintiff "with any enforcement proceeding," and "the Government has not in any way restricted … [Plaintiff's] activities." *Saline Parents*, 88 F.4th at 307–08; *see also* Compl. ¶ 49 (acknowledg[ing] that FDA did not "request[] any market action by Martian Sales"). Therefore, Plaintiff "ha[s] not suffered any 'immediate and significant' hardship sufficient to 'outweigh institutional interests in the deferral of review.'" *Saline Parents*, 88 F.4th at 308 (quoting *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)). This lawsuit is unripe, and the Court should dismiss it for lack of subject-matter jurisdiction.

## II. Even if the Court has subject-matter jurisdiction, the Complaint alleges no plausible claim

### A. Count I fails to state a claim under the APA because it does not challenge "agency action" or "final agency action"

Count I contends that the Safety Alert is "arbitrary and capricious" under the APA, 5 U.S.C. § 706(2). Compl. ¶¶ 61–66. "The APA, however, only provides a right to judicial review of '*final* agency action for which there is no other adequate remedy in a court.'" *Holistic Candlers*, 664 F.3d at 943 (quoting 5 U.S.C. § 704). As explained above, Plaintiff does not challenge any agency action or final agency action taken by FDA, *see* Part I.B.1, and therefore Count I fails to state a claim under the APA. *See Del. Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec.*, 106 F.4th 1195, 1203 (D.C. Cir. 2024).

### B. Count II fails to state a due process claim

In Count II, Plaintiff attempts to recast its flawed APA claim as a violation of due process. Plaintiff contends that FDA "failed to provide notice to Martian Sales before it issued the [Safety Alert]," which "damaged O.P.M.S.'s brand and Martian Sales' goodwill and therefore deprived" Plaintiff of its "property rights" in "revenue." Comp. ¶¶ 69, 70. This claim fails because (1) Plaintiff's claimed injuries flowing from reputational harm do not constitute a deprivation of a property right; and (2) as discussed above, the Safety Alert is not a final agency action and has no legal consequences, so Plaintiff was not "due" any process under the Fifth Amendment. *See NB ex rel. Peacock v. Dist. of Columbia.*, 794 F.3d 31, 41 (D.C. Cir. 2015) ("To bring a claim under the Due Process Clause, a plaintiff must show (i) deprivation of a protected liberty or property interest; (ii) by the government; (iii) without the process that is 'due' under the Fifth Amendment.").

#### 1. Plaintiff's claimed reputational injuries fail as a matter of law

Although Plaintiff claims that the alleged reputational harm to the OPMS Black Liquid brand has "deprived" the company of its "property interests," Compl. ¶ 69, there is "no

constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause," *Paul v. Davis*, 424 U.S. 693, 702 (1976). "[R]eputation alone, apart from some more tangible interests such as employment," is not "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701; *see Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) ("stigma alone is insufficient to invoke due process protections"); *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) ("[S]o long as … damage flows from injury caused by the defendant to a plaintiff's reputation," no constitutional claim is alleged).

Under the "stigma-plus rule," plaintiffs must show, "in addition to reputational harm, that (1) the government has deprived them of some benefit to which they have a legal right, *e.g.*, the right to be considered for government contracts in common with all other persons; or (2) the government-imposed stigma is so severe that it broadly precludes plaintiffs from pursuing a chosen trade or business." *Gen. Elec. Co.*, 610 F.3d at 121 (cleaned up); *accord Townsend v. United States*, 282 F. Supp. 3d 118, 127 n.3 (D.D.C. 2017). Plaintiff fails to allege either of these "additional injuries." *See Gen. Elec. Co.*, 610 F.3d at 121.

### a.  The Complaint does not allege that FDA has deprived Plaintiff of a benefit to which it has a legal right

Plaintiff cannot demonstrate the first type of "additional injur[y]" because the Safety Alert did not deprive it "of a right previously held under state law" or otherwise effect an "alteration of legal status." *Gen. Elec. Co.*, 610 F.3d at 121 (quoting *Davis*, 424 U.S. at 708). The D.C. Circuit has consistently rejected Plaintiff's theory of "'consequential' injuries"—those based on the market's response to government action—as "insufficient to merit Due Process Clause protection." *Id.* at 113–14.

The D.C. Circuit's decision in *General Electric Co. v. Jackson* is squarely on point. There, the Court rejected GE's due process challenge to EPA's unilateral administrative orders that directed the company to clean up a hazardous waste site. *See* 610 F.3d at 113. The Court

described GE's theory of harm as alleging that, "by declaring that [GE] is responsible for cleaning up a hazardous waste site, [EPA's order] harms [GE]'s reputation, and the market, in turn, devalues its stock, brand, and credit rating." *Id.* at 121. GE's argument, however, was "foreclosed" by Supreme Court precedent rejecting due process claims where the government's "potentially damaging allegation" about an individual "may have seriously limited his future employment opportunities" but "extinguished none of [the individual's] previously held legal rights." *Id.* at 121 (discussing *Davis*, 424 U.S. at 697, 711–12). GE's similar "indirect effect" theory of harm—harm "resulting not from EPA's issuance of the [order], but from market reactions to it—" thus failed to establish a deprivation of a right. *Id.* at 113–114, 122.

Similarly, in *Industrial Safety Equipment*, the D.C. Circuit held that EPA's issuance of a report warning against the use of certain asbestos-protection respirators, but not prohibiting them, did not deprive manufacturers of their property interest in the respirators' EPA certifications. 837 F.2d at 1121–22. The Court explained that the government regulators "have not revoked any certificates; rather, they have only introduced new information into the market with a possible effect on competition," and such an "indirect effect" was insufficient to state a due process claim. *Id.* at 1122.

As with the plaintiffs in *General Electric* and *Industrial Safety Equipment*, Plaintiff here does not (and could not plausibly) allege that the Safety Alert has any "binding effect," *O'Donnell v. Barry*, 148 F.3d 1126, 1139–42 (D.C. Cir. 1998), that it "prohibit[s]" anyone from selling, purchasing, or consuming OPMS Black Liquid, *Gen. Elec. Co.*, 610 F.3d at 122, or that it "creates legally binding consequences" for marketing the product, *Hi-Tech Pharms*, 2020 WL 3498588, at *6 n.6. Indeed, Plaintiff acknowledges that FDA has not "requested any market action from Martian Sales," Compl. ¶ 49, and that "FDA has not issued a proposed or final rule specific to the regulation of kratom," *id.* ¶ 34. Plaintiff's alleged "financial losses that resulted from FDA's [Safety Alert]" therefore are "not a sufficiently direct deprivation of property to state a due process violation." *Mallinckrodt Inc. v. FDA*, No. 8:14-cv-03607 (DKC), 2015 WL 13091366, at *9–10 (D. Md. July 29, 2015); *see Orton Motor, Inc. v. HHS*, 884 F.3d 1205, 1215

19

(D.C. Cir. 2018) (dismissing due process claim where plaintiff "failed to show that the mere issuance of a warning letter, absent further enforcement action, effects any such deprivation").

Because the Complaint alleges only "consequential injuries" resulting from "market reactions" to the Safety Alert, Plaintiff cannot establish that FDA has deprived it of a benefit to which it has a legal right. *See Gen. Elec. Co.*, 610 F.3d at 113–14.

### b.  The Complaint does not allege that any government-imposed stigma is so severe that it precludes Plaintiff from pursuing its chosen business

To establish the second type of "additional injur[y]" under the stigma-plus rule, plaintiffs must "show that alleged reputational harm *completely* destroys the value of their property." *Gen. Elec. Co.*, 610 F.3d at 121. That is, the stigma resulting from government action must have "altered [a plaintiff's] status in a tangible way," with "harms approaching, in terms of practical effect, formal exclusion from a chosen trade or profession." *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 644–45 (D.C. Cir. 2003). A plaintiff could demonstrate such a "broad preclusion" from its chosen trade by proving that the government's actions have or will "effectively put [it] out of business." *Id.* at 644.

Plaintiff claims only that its "business and reputation have been and continue to be adversely affected," Compl. ¶ 55, and that "damage to its brand and goodwill" has "result[ed] [in] significant loss of sales" and "deprived [it] of significant revenue," *id.* ¶¶ 50, 69. These alleged financial losses "fall far short of" the "consequences" necessary to support a due process claim. *Gen. Elec. Co.*, 610 F.3d at 122. For example, in *Industry Safety Equipment*, the D.C. Circuit found insufficient similar allegations that government action would cause plaintiff's customers to "shift to purchase" a competitor's products. 837 F.2d at 1122. The Court observed that this loss in sales had not "rendered valueless" the plaintiff's property, and therefore it could "hardly be said to constitute a constitutional deprivation of property deserving fifth amendment protection." *Id.* The Second Circuit has likewise held that plaintiffs' allegations of "damage not only to their business reputation, but [also the deprivation] of the good will in their business" and

"discourage[ment] [to] customers" were insufficient to state a due process claim. *Sadallah v. City of Utica*, 383 F.3d 34, 38–39 (2d Cir. 2004); *see also Advance Am. v. FDIC*, No. 14-cv-953 (GK), 2017 WL 2672741, at \*3–4 (D.D.C. Feb. 23, 2017) (determining due process claims likely meritless where plaintiff failed to "show[] that Federal Defendants deprived Plaintiffs of their right to hold a bank account," explaining that "it is insufficient for Plaintiffs to show that they have merely had some bank accounts terminated").

Plaintiff's allegations of a mere "loss in sales" are a far cry from being "formal[ly] exclu[ded] from a chosen trade or profession," *Trifax*, 314 F.3d at 644, or its property interest having been "rendered valueless," *Indus. Safety Equip.*, 837 F.2d at 1122. Moreover, OPMS Black Liquid is just one of several kratom products marketed with Plaintiff's trademark, *see* Compl. ¶¶ 1, 3, 37–38, and Plaintiff does not allege that reputational harm from the Safety Alert has "*completely* destroyed" its business, *Gen. Elec. Co.*, 610 F.3d at 121, or "effectively put [it] out of business," *Trifax*, 314 F.3d at 644. Accordingly, Plaintiff fails to show either of the requisite injuries for a "stigma plus" claim, and the Court should dismiss Count II.

### 2.  The Safety Alert is not final agency action and does not implicate due process

Plaintiff cannot state a due process claim also because, as discussed above, the Safety Alert is "non-final" and "non-binding," and therefore Plaintiff was "due" no process. *Harris v. McDonald*, No. 17-cv-594 (JEB), 2017 WL 4217101, at \*6 (D.D.C. Sept. 19, 2017) (collecting cases holding that non-final and non-binding agency actions cannot be challenged under the APA or Due Process Clause); *Hi-Tech Pharms*, 2020 WL 3498588, at \*6 n.6 (dismissing due process claim for lack of final agency action). "When [the] preliminary determination is without legal effect in and of itself, due process will be satisfied if there is an opportunity to be heard before any final order of the agency becomes effective." *Georator Corp. v. EEOC*, 592 F.2d 765, 768–69 (4th Cir. 1979) (citing *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598 (1950)). That is precisely the case here. FDA's statements in the Safety Alert were without legal effect, and Plaintiff would have the opportunity for a hearing if, for example, the government sought to

enforce against the company by "bring[ing] suit in district court." *Georator*, 592 F.2d at 769. Accordingly, the Court should dismiss Plaintiff's due process claim in Count II of the Complaint.

CONCLUSION

The Court should dismiss the Complaint because Plaintiff lacks Article III standing and its claims are prudentially unripe. Even if the Court had subject-matter jurisdiction, the Complaint fails to state a claim under the APA or the Due Process Clause and should therefore be dismissed.

Dated: December 23, 2024

OF COUNSEL:

PATRICIA ZETTLER
Deputy General Counsel
U.S. Department of Health and Human
   Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BURDEN H. WALKER
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director

HILARY K. PERKINS
Assistant Director

*/s/ David H. Hixson*
DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov