# **Exhibit B**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| ESTATE OF DANIEL SCOTT PAUL by and through KATHRYN ANN PAUL as Personal Representative, an Oregon citizen,<br><br>    Plaintiff,<br><br>v.<br><br>OPMS (a/k/a Optimized Plant Mediated Solutions; O.P.M.S.; OPMS Solutions, Inc.; OPMS Solutions Group LLC; OPMS Solutions; OPMS Wholesale; OPMS Tech 2, LLC; and/or Choice Organics); Martian Sales, Inc.; South Sea Ventures (d/b/a South Sea Ventures, LLC; MIT 45; Santiano Novasio and/or Crown Trading); Christopher Novasio (a/k/a Santiano Christopher Novasio; and Christopher David James Novasio); Weece's Market; KS Food Market; and John Does 1-20;<br><br>    Defendants. | Case No. 21CV33403<br><br>**DECLARATION OF MARK REILLY IN SUPPORT OF DEFENDANT MARTIAN SALES INC.'S MOTION TO DISMISS PURSUANT TO ORCP 21A(2)**<br><br>**Oral Argument Requested** |

I, Mark Reilly, declare as follows:

1. I am the president of Martian Sales Inc. ("Martian Sales"). I make this declaration on personal knowledge and in support of Martian Sales' Motion to Dismiss pursuant to ORCP 21A(2).

2. Martian Sales is a Wyoming corporation. When it was first formed in 2012, Martian Sales had its principal place of business in Cheyenne, Wyoming. It currently has its principal place of business in Marietta, Georgia. Martian Sales has never maintained its

Page 1     DECLARATION OF MARK REILLY IN SUPPORT OF DEFENDANT MARTIAN SALES INC.'S MOTION TO DISMISS PURSUANT TO ORCP 21A(2)

1 headquarters or any other offices in Oregon. Martian Sales has no employees in Oregon, does not own any property in Oregon, does not have any bank accounts in Oregon, does not maintain a post office box in Oregon, does not have a registered agent in Oregon, is not registered to do business in Oregon and does not otherwise regularly engage in any type of business activities in Oregon.

3. Martian Sales is the owner of certain intellectual property consisting of the trade names and marks for O.P.M.S. brand kratom products. Beginning in 2014 and continuing since then, Martian Sales has licensed the exclusive right to use the O.P.M.S. trade names and marks to a third party for use in connection with products manufactured, distributed or sold by that third party. A true and correct copy of the 2014 license agreement is attached to this declaration as Exhibit 1.

4. I understand that the plaintiff in this case claims that Daniel Scott Paul's death in July 2019 was caused, at least in part, by toxicity due to consuming kratom from packages bearing the O.P.M.S. brand. Martian Sales did not then and does not now manufacture, market, distribute or sell, or participate in any other party's manufacture, marketing, distribution or sale of, O.P.M.S. brand kratom products. Martian Sales is not involved in and does not exercise any control over how O.P.M.S. brand kratom products are marketed or distributed for sale to the public, including to residents of Oregon.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

Dated this 23 day of November, 2021.

_____
Mark Reilly

Page 2   DECLARATION OF MARK REILLY IN SUPPORT OF DEFENDANT MARTIAN SALES INC.'S MOTION TO DISMISS PURSUANT TO ORCP 21A(2)

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP
Attorneys at Law
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204-1357
503.224.6440 / Fax: 503.224.7324

# INTELLECTUAL PROPERTY LICENSE AGREEMENT

**THIS AGREEMENT** is made as of October 1, 2014 (hereinafter the "Effective Date") by and between Martian Sales Inc., a Wyoming corporation ("Licensor") and LICENSEE NAME **ERI WAHYU HIDAYAT**, of COUNTRY and STATE **WEST JAVA, INDONESIA** ("Licensee") (together, the "Parties").

## RECITALS

**WHEREAS**, Licensor owns and claims the rights to the intellectual property for trade names, marks associated with the trade names, images that may be related to the trade names, associated or related trade names, brands or brand identities belonging to the O.P.M.S., O.P.M.S. Kratom,. O.P.M.S. Gold, O.P.M.S. Silver and any other O.P.M.S. product (the "Intellectual Property").

**WHEREAS**, Licensee desires to license the right to use the Intellectual Property connection with its business operated in Indonesia.

**NOW, THEREFORE**, the Parties hereby agree as follows:

1. <u>License</u>. Licensor grants to Licensee a limited, exclusive license, with no right to sublicense or transfer, for use solely in connection with the marketing and sale of goods manufactured, processed, packaged, distributed or sold by Licensee. Licensee may have goods manufactured and packaged by third parties.

2. <u>Royalty Fee</u>. Licensee to pay to Licensor, upon the sooner of the Termination of this Agreement or once every ten (10) years, a Royalty Fee of USD $1,000,000.00. If the Agreement is terminated sooner than 10 years, the Royalty Fee due will be prorated on a monthly basis.

3. <u>Termination</u>. This license will continue for ten (10) years, so long as Licensee is not in default of this Agreement.
    a. The License granted to Licensee hereunder may be terminated by either Party at any time, for any reason, upon thirty (30) days' notice.
    b. Each party may terminate this Agreement immediately upon notice to the other party if the other party commits a breach of any term of this Agreement which is not capable of remedy, or, in the case of a breach capable of being remedied, has failed within fifteen (15) days after receipt of notice from the other party, to remedy such beach to the reasonable satisfaction of the other party; provided, however, that Licensor shall have the right to terminate this Agreement immediately upon notice to Licensee if License, as determined by Licensor in its sole discretion, willfully commits a breach of this Agreement.
    c. Licensor shall have no obligation to compensate or indemnify Licensee, except as otherwise expressly provided herein, in the event Licensor terminates this Agreement.
    d. Upon termination of this Agreement for any reason, the License granted to Licensee hereunder shall immediately terminate and Licensee shall have no further right to use

the Intellectual Property for any purpose, including but not limited to, using the Intellectual Property in connection with the marketing, packaging, or sale of goods.

c. Within fifteen (15) days after such termination, Licensee will return or, at Licensor's election, destroy all copies of all packaging and other printed materials bearing the Intellectual Property.

1. Sections 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 of this Agreement shall survive the Termination of this Agreement.

4. **Quality Control.** Licensee agrees that goods or services associated with the Intellectual Property will be of the highest quality, the Licensee will conduct itself in a manner so as to preserve the goodwill associated with the Intellectual Property and will not do anything that would damage or depreciate such goodwill and will cooperate with Licensor in taking such actions as are reasonably necessary or desirable to ensure quality compliance, as may be reasonably specified by Licensor from time to time.

5. **Assignment.** This Intellectual Property License may not be assigned, sublicensed or otherwise transferred without prior consent from Licensor which may be granted, conditioned or denied at Licensor's sole discretion.

6. **Retention of Ownership.** Licensee acknowledges that Licensor is the owner of the Intellectual Property and that Licensor retains all ownership rights, subject to the limited license granted pursuant to this Intellectual Property License Agreement, and that Licensor makes no representations or warranties, express or implied, except as expressly set forth in this Agreement. All usage of the name shall inure to the benefit of Licensor. Licensor has the right, but not the obligation, to apply to register the Intellectual Property, in all forms and variations, as a Intellectual Property or service mark, as the case may be, with any or all state, federal or foreign Intellectual Property authorities as Licensor shall, in its sole discretion, determine. Licensee shall cooperate with Licensor to sign all documents, provide adequate specimens and information, and to take all steps reasonably necessary to allow Licensor to register the Intellectual Property as so determined. Licensee may request that Licensor or Licensor may decide to amend, modify or otherwise add to the Intellectual Property's forms, uses, or variations. If such Intellectual Property Modifications occur, Licensor may include those in this Agreement for no additional Royalty Fee. The terms and conditions of this Agreement remain in effect for any Intellectual Property Modifications included for Licensee's use.

7. **Responsibility for Licensed Products/Services.** Licensee shall be solely responsible for and assume all costs and liabilities related to: (a) the quality of the licensed products and services bearing the Intellectual Property, (b) any defect in or of licensed products (whether such defect be in materials, workmanship or design) or failure of the licensed services, (c) product liability of the licensed products, (d) conformance of licensed products/services will strictly adhere with all applicable laws, rules, regulations and standards of any country in which the licensed products are sold, including any government or regulatory authority (i.e., FDA), health, consumer product, and agricultural regulations, etc, and (e) the promotion, sale, documentation and marketing of licensed products/services. Licensee shall be solely responsible for the payment and discharge of any taxes or duties relating to any transactions of Licensee, its subsidiaries, employees, contractors, agents or sublicensees, in connection with the manufacture, use, distribution, or sale, of licensed products or services.

8. **Indemnification.** Licensee shall indemnify and defend Licensor against any and all claims, costs, damages and expenses, including reasonable attorneys' fees and expenses, arising out of any claim by a third party against Licensee or Licensor for infringement based on Licensee's use of the Intellectual Property. Licensee must provide Licensor prompt notice of any claim giving rise to such indemnity. If a claim of infringement by a third party occurs,

Licensor may demand by notice (the "Termination Notice") at any time that Licensee terminate the use of the Intellectual Property, and Licensee shall terminate the use of the Intellectual Property immediately upon receipt of the Termination Notice. Licensee shall defend, indemnify and hold Licensor and/or any of its affiliates, subsidiaries, agents and assignees, harmless from and against any and all claims, demands, causes of action, liability, loss, damage, judgements or expenses (including without limitation reasonable attorneys' fees, expenses and court costs) (collectively, the "Claims") arising out of or related to (x) Licensee's design, manufacturing, distribution, shipment, labeling, sale, advertisement or promotion of goods or the labeling, packaging, advertising and promotional materials for the goods (other than Claims solely related to the Intellectual Property), including, but not limited to, any Claim for personal injury, wrongful death or any similar matter; (y) Licensee's breach of any of its representations, warranties, covenants or other obligations hereunder; and (z) Licensee's gross negligence or willful misconduct. Licensor shall have the right to defend any such claim or suit through counsel of its own choice at Licensee's expense.

9. **Relationship.** Nothing in this Agreement shall be construed as creating a joint venture, partnership, agency or employment relationship between the Parties. Except as specified herein, neither party shall have the right, power or implied authority to create any obligation or duty, express or implied, on behalf of the other party hereto.

10. **Disputes.** The rights and liabilities of the Parties arising out of or relating to this Agreement will be governed by the laws of the state of **Wyoming** and any disputes between the Parties will be submitted to binding arbitration in **Wyoming** under the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award may be entered in any court of competent jurisdiction; provided, however, that either party may seek preliminary injunctive or other equitable relief in court pending arbitration to prevent irreparable harm. The prevailing party in any arbitration or litigation shall be entitled to recover all reasonable expenses thereof, including attorneys' fees in connection with such proceedings or any appeal thereof.

11. **Covenants of Licensee.** Licensee covenants and agrees that:

    a. it shall at all times conduct its business related to its manufacturing, labeling, packaging, marketing, use, offer for sale and sale of goods and the Intellectual Property in strict compliance with all health, safety and other laws, ordinances, orders, rules and regulations (state, federal, municipal or promulgated by other agencies or bodies having or claiming jurisdiction), and all applicable industry standards, including product requirements and standards for human consumption if such use is chosen during the Licensees' marketing and sale of any products using the Intellectual Property, and will observe the highest standards of quality and fair dealing with customers;

    b. all goods manufactured, processed, distributed and sold hereunder will be merchantable and fit for the purpose for which they are intended;

    c. all goods will conform in all respects to the samples approved by Licensor and that Licensee will not distribute or sell any goods which are of a quality or standard inferior to or different from the approved quality or are injurious to the reputations and goodwill associated with the Intellectual Property; and,

    d. Licensee shall not use third parties to manufacture or package goods unless such third parties have signed an acknowledgment provided by Licensor.

    e. Licensor shall not be responsible for providing any formulas or direction towards the manufacturing, composition, marketing, sale or end use of the products which the Licensee uses the Intellectual Property on, that is being licensed as a part of this Agreement.

12. **Intellectual Property.**

a. Licensee agrees not to contest or otherwise challenge or attack Licensor's rights in and to the Intellectual Property or the validity of the Intellectual Property or the license granted herein during the term hereof and thereafter. Licensee further agrees not to do anything either by act of omission or commission which might impair, jeopardize, violate, or infringe the Intellectual Property, or to misuse or bring into dispute the Intellectual Property or otherwise diminish Licensor's goodwill with respect to the Intellectual Property, as determined by Licensor in its sole discretion. Licensee shall not use the Intellectual Property as part of its company name, corporate name or trade name except with the prior consent of Licensor, which consent will not be unreasonably withheld. Licensee shall not register or attempt to register the Intellectual Property or similar intellectual property during the term of this Agreement or thereafter, or aid or abet anyone else doing so.

b. Licensee shall prominently display the appropriate notice(s) in conjunction with any and all use of the Intellectual Property, as indicated in the Intellectual Property Guidelines. Licensee shall not use any other Intellectual Property or design in combination with any Intellectual Property without Licensor's prior approval. Licensee agrees that it will not use the Intellectual Property in a misleading or confusing manner, nor in a manner that misrepresents any relationship between the Parties. Licensee hereby acknowledges Licensor's right, title and interest in and to the Intellectual Property and agrees not to claim any title to the Intellectual Property or any right to use the Intellectual Property except as permitted by this Agreement. Any goodwill associated with the use of the Intellectual Property by Licensee will inure solely to the benefit of the Licensor. Licensor reserves the right to object to unfair use or misuse of its Intellectual Property or other violations of applicable law. Nothing contained herein shall prevent Licensor or any of its licensees or distributors from manufacturing, distributing, or selling any products or services of any kind with the Intellectual Property in any territory in the world.

13. <u>Limitation of Liability</u>. In no event shall Licensor be liable to Licensee, regardless of the form of action or theory of recovery for any indirect, special, exemplary, consequential, incidental or punitive damages, or for lost profits or business interruption losses arising from or in connection with this Agreement or any alleged or actual breach thereof, even if Licensee has been advised of the possibility of such damages. The Licensee accepts full responsibility both legally and otherwise for any and all use of the Intellectual Property.

14. <u>Independent Contractors</u>. The relationship of Licensor and Licensee established by this Agreement is that of independent contractors, and neither party shall be considered or deemed to be an agent, employee, joint venturer or partner of the other party as a result of this Agreement. Neither Party shall have the right, power or authority to assume, create, or incur any expense, liability or other obligation, express or implied, on behalf of the other and shall not represent itself as an agent of the other party or as otherwise authorized to act for or on behalf of the other party. Neither party shall be responsible for the payment of workers' compensation, disability benefits, unemployment insurance, and for the withholding of income taxes, social security or business license taxes for the other party's employees.

15. <u>Miscellaneous</u>. In the event that any provision of this license would be held illegal, invalid or unenforceable by a court or any jurisdiction, Licensor will be allowed to immediately terminate this license without any legal formality and Licensee shall terminate the use of the Intellectual Property immediately upon receipt of the notice of the decision of Licensor. This Agreement shall be interpreted under the laws of the State of Wyoming. Parties agree to submit any dispute arising out of this Agreement to, and consent to the jurisdiction of, the courts of the State of Wyoming or any Federal District Court having jurisdiction within such state. This Agreement supersedes all prior understandings, oral or written, with respect to the subject matter hereof and shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns. No amendment or change in this Agreement may be made except in writing signed by the Parties. Any waiver under this Agreement shall be in writing,

and no waiver or absence of granting a waiver shall be deemed a waiver or a continuing waiver.

16. **Notices.** All notices, approvals and requests hereunder shall be verbal or in writing.

17. **Confidentiality.** From and after the Effective Date, Licensee shall, and shall cause their affiliates, subsidiaries, agents and assignees to hold in confidence any and all information, whether written or oral, concerning the Licensor and the Intellectual Propertys. If Licensee is compelled to disclose any information by judicial or administrative process or by other requirements of Law, Licensee shall promptly notify Licensor and shall disclose only that portion of such information which Licensees are advised by counsel is legally required to be disclosed, provided that Licensee shall use reasonable best efforts to obtain an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information. Licensee acknowledges that a breach or threatened breach of this Section 17 would give rise to irreparable harm to Licensor, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Licensee of any such obligations, Licensor shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

IN WITNESS WHEREOF, the Parties have entered into this Intellectual Property License Agreement, with an effective of **01** day of **October**, 20**14**.

Licensee: ERI WAHYU HIDAYAT

Dated: OCTOBER 3Rd 2014

By: ERI WAHYU HIDAYAT

Address:
JL IR H JUANDA NO. 539
BANDUNG, WEST JAVA

Signature:

Licensor: Martian Sales Inc.

Dated: 10/01/14

By: Mark Reilly

Address: 1621 Central Ave.
Cheyenne, WY 82001

Signature: