**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Martian Sales, Inc.,

Plaintiff,

v.

U.S. Food and Drug Administration, *et al.*,

Defendants.

Case No. 1:24-cv-03031-RBW

**Defendants' Reply in Support of their Motion to Dismiss**

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel
U.S. Department of Health and Human Services

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and Human Services
Chief Counsel
U.S. Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director, Civil Litigation

HILARY K. PERKINS
Assistant Director

DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Court lacks subject-matter jurisdiction ..... 2

A. Plaintiff has not met its burden to establish standing ..... 2

B. Plaintiff's claims are unripe because they do not challenge final agency action ..... 5

1. The Safety Alert is neither "agency action" nor "final agency action" ..... 5

2. Plaintiff has not suffered hardship sufficient to outweigh the interest in deferring judicial review ..... 14

II. Even if the Court has subject-matter jurisdiction, the Complaint alleges no plausible claim ..... 15

A. Plaintiff's claimed reputational injuries fail as a matter of law ..... 15

B. The Safety Alert is not final agency action and does not implicate due process ..... 17

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases**

*Arrow Reliance, Inc. v. Califf*,
No. 2:22-cv-1057, 2022 WL 18027595 (W.D. Wash. Dec. 30, 2022) .............................. 7, 9, 12

*Am. Chemistry Council, Inc. v. Nat'l Acad. of Scis.*,
No. 23-cv-2113 (JDB), 2024 WL 1141465 (D.D.C. Mar. 15, 2024) .................................... 3, 5

*CropLife America v. EPA*,
329 F.3d 876 (D.C. Cir. 2003) ........................................................................................ 10

*CTS Corp. v. EPA*,
759 F.3d 52 (D.C. Cir. 2014) .......................................................................................... 3

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ......................................................................................... 11

*Doe v. Tenenbaum*,
127 F. Supp. 3d 426 (D. Md. 2012) ................................................................................ 11

*Elec. Priv. Info. Ctr. v. IRS*,
910 F.3d 1232, 1244 (D.C. Cir. 2018) ............................................................................ 12

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ........................................................................................................ 2

**General Electric Co. v. Jackson*,
610 F.3d 110 (D.C. Cir. 2010) ........................................................................................ 16

*Hearst Radio, Inc. v. FCC*,
167 F.2d 225 (D.C. Cir. 1948) .................................................................................... 6, 14

*Holistic Candlers & Consumers Ass'n v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ....................................................................... 5, 12, 13, 14

*Impro Products, Inc. v. Block*,
722 F.2d 845 (D.C. Cir. 1983) ...................................................................................... 6, 9

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) .................................................................................. 10, 14

**Indus. Safety Equip. Ass'n, Inc. v. EPA*,
837 F.2d 1115 (D.C. Cir. 1988) ........................................................... 6, 7, 13, 14, 16, 17

*Invention Submission Corp. v. Rogan*,
357 F.3d 452 (4th Cir. 2004) ....................................................................................... 6, 12

*Joshi v. Nat'l Transp. Safety Bd.*,
791 F.3d 8 (D.C. Cir. 2015) ....................................................................... 13, 14, 15, 16

*Kokesh v. SEC*,
581 U.S. 455 (2017) ........................................................................................................ 6

*Lillemoe v. U.S. Dep't of Agric.*,
No. 15-cv-2047 (DLF), 2020 WL 1984256 (D.D.C. Apr. 27, 2020) ........................................ 5

*Nat'l Ass'n of Home Builders v. EPA*,
786 F.3d 34 (D.C. Cir. 2015) .................................................... 3

*Nat'l Mining Ass'n v. Jackson*,
768 F. Supp. 2d 34 (D.D.C. 2011) .................................................... 10, 13

*Ovanova, Inc. v. U.S. Dep't of Agric.*,
No. 24-cv-2769 (JEB), 2025 WL 343118 (D.D.C. Jan. 30, 2025) .................................................... 4, 5

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) .................................................... 12, 13, 14

*Siegert v. Gilley*,
500 U.S. 226 (1991) .................................................... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................... 2

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*,
18-cv-2115 (JEB), 2019 WL 689987 (D.D.C. Feb. 19, 2019) .................................................... 3, 4

*Trifax Corp. v. Dist. of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) .................................................... 16, 17

*Trudeau v. FTC*,
384 F. Supp. 2d 281 (D.D.C. 2005) .................................................... 6, 7

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) .................................................... 7

*Trump v. New York*,
592 U.S. 125 (2020) .................................................... 15

*U.S. Postal Serv. v. Gregory*,
534 U.S. 1 (2001) .................................................... 8

*Winmar Constr., Inc. v. Iron Kingdom, Inc.*,
No. 24-cv-968 (JEB), 2024 WL 3338922 (D.D.C. July 9, 2024) .................................................... 4, 5

**Statutes**

5 U.S.C. §
551(10) .................................................... 6
552(b)(6) .................................................... 8
704 .................................................... 14

15 U.S.C. § 2055a(c) .................................................... 11

**Regulations and Rules**

21 C.F.R. § 10.75 .................................................... 15

Fed. R. Civ. P. 12(b)(1) .................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................... 1

**Other Authorities**

DEA, *Kratom Drug Fact Sheet* (Dec. 2024),
https://www.dea.gov/sites/default/files/2025-01/Kratom-Drug-Fact-Sheet.pdf.................................9

OPMS, *O.P.M.S. Kratom Products*,
https://opmskratom.com/opms-black-liquid-auth/ ...............................................................8, 9

*Penalty*, Black's Law Dictionary (12th ed. 2024) .........................................................................10

## INTRODUCTION

After receiving reports of individuals who suffered serious adverse events after consuming Plaintiff's kratom product, OPMS Black Liquid, FDA issued a Safety Alert to warn the public about the reported safety risks. FDA's Safety Alert did not have any legal consequences, determine any rights, or purport to impose any obligations on Plaintiff or anyone else. Nonetheless, Plaintiff contends that it has the right to demand that this Court order FDA to revoke the Safety Alert. FDA's motion to dismiss explained why the Complaint fails to establish subject-matter jurisdiction or state a claim, and Plaintiff's responses do not save this lawsuit.

*First*, the Court lacks subject-matter jurisdiction because Plaintiff has failed to establish Article III standing. Contrary to Plaintiff's assertions, it is not the object of any final agency action, and its vague and unsubstantiated allegations of reputational harm and loss of sales are insufficient to demonstrate an injury in fact.

*Second*, the Court lacks subject-matter jurisdiction because Plaintiff's claims are prudentially unripe. This circuit holds uniformly that non-binding public statements like the Safety Alert are neither "agency action" nor "final agency action" under the Administrative Procedure Act (APA), rendering them unfit for judicial decision. Despite Plaintiff's repeated, conclusory allegation that the Safety Alert is a "sanction," the Safety Alert imposed no penalty and was not any other type of "agency action" under the APA. Beyond that, the Safety Alert was not "final agency action" because it did not consummate any decisionmaking process or determine any rights or obligations. Plaintiff's claims are therefore not ripe for this Court's review, and they should be dismissed under Rule 12(b)(1).

*Third*, even if this Court has jurisdiction, it should dismiss the Complaint under Rule 12(b)(6). Count I fails to state a claim under the APA because the Safety Alert is not final agency action. And Count II fails to state a claim under the Due Process Clause because (i) Plaintiff's alleged reputational injuries do not constitute a deprivation of a protected property or liberty interest, and (ii) the Safety Alert was not final agency action and had no legal

consequences, so no process was "due" under the Fifth Amendment. Thus, even if this Court has jurisdiction, it should dismiss this case for failure to state a claim.[1]

## ARGUMENT

### I. The Court lacks subject-matter jurisdiction

#### A. Plaintiff has not met its burden to establish standing

FDA's motion to dismiss explained that Plaintiff has failed to "clearly allege facts demonstrating" an injury in fact and thus has not established Article III standing. Mem. 7–9 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The Complaint offers conclusory allegations that the Safety Alert caused reputational harm that resulted in a loss of sales and revenue. But it does not allege facts demonstrating those losses, when they occurred, or even how a purported drop in sales injures Plaintiff in its capacity as trademark owner. To the contrary, Plaintiff's prior distribution agreement provided for a flat licensing fee, indicating that a drop in sales would not affect Plaintiff financially. *Id.* (citing Heller Decl. Ex. B).

Plaintiff's response likewise does not attempt to show how, or to what extent, the Safety Alert caused it any financial or other harm, or whether that harm is ongoing. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) ("[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury."). To the extent such evidence exists, those facts would be in Plaintiff's possession. Rather than bolstering its vague and conclusory allegations, Plaintiff asserts that standing to challenge agency conduct

---

[1] On July 26, 2024, Plaintiff's counsel submitted a broad request to FDA under the Freedom of Information Act (FOIA). In its opposition to FDA's motion to dismiss, Plaintiff repeatedly and inaccurately claims that "FDA has refused to respond to Martian Sales's FOIA request," Opp. 25, "FDA has refused to provide any documentation," *id.* 30–31, and "[FDA] refuses to provide the data and information—including the purported autopsy report—on which it relied to [issue the Safety Alert]," *id.* 9. In fact, between August 2024 and January 2025, FDA made four productions of records, totaling over 700 pages, in response to Plaintiff's FOIA request. FDA's response to the FOIA request, which is still ongoing, has included numerous adverse event reports. The autopsy report that Plaintiff asserted it has not received was provided (along with an accompanying toxicology report) in the fourth production, on January 22, 2025, prior to Plaintiff's submission of its opposition to the motion to dismiss. Plaintiff's assertions regarding FDA's response to its FOIA request are, in any event, immaterial to the Court's resolution of FDA's motion to dismiss because, even treating them as true for purposes of this motion, Plaintiff still fails to establish subject-matter jurisdiction or state a claim upon which relief can be granted.

"does not require any allegation of lost revenue" and that, in any event, "suffer[ing] only reputational injury" is sufficient to establish standing. Neither argument overcomes the deficiencies in Plaintiff's complaint. Opp. 15–19.

While Plaintiff is correct that "regulatory constraints" can qualify as injury in fact, Opp. 16 (citing *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 43 (D.C. Cir. 2015)), "standing is not … automatic, but depends on plaintiffs showing that they satisfy the doctrinal requirements of Article III," *Nat'l Ass'n of Home Builders*, 786 F.3d at 43 (collecting cases). That is because "[i]n regulated-party cases, as in other types of challenges, 'standing is always a case- and context-specific inquiry.'" *Id.* (quoting *CTS Corp. v. EPA*, 759 F.3d 52, 58 (D.C. Cir. 2014)). Thus, the D.C. Circuit has held that an organization's members lacked standing to challenge EPA's navigable water determination because it did not change the legal status of the members' properties and had not been used to enforce against the members. *Id.* at 39 (citation omitted).

Case law finding standing to challenge "regulatory constraints" does not advance Plaintiff's argument in any event because the Safety Alert imposes no legal consequences or "constraints" on Plaintiff. *See id.* at 43; Mem. 14. Nor has Plaintiff or its product been the subject of any enforcement action. Accordingly, the mere fact that Plaintiff challenges agency conduct does not afford it standing.[2]

Plaintiff's alleged reputational injuries also fail to demonstrate an injury in fact. "Reputational harm generally gives rise to a cognizable injury in two situations." *Am. Chemistry Council, Inc. v. Nat'l Acad. of Scis.*, No. 23-cv-2113 (JDB), 2024 WL 1141465, at *15 (D.D.C. Mar. 15, 2024). "The first is when the harm causes a loss of clients or other business —*i.e.*, economic injury." *Id.* (quoting *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 18-cv-2115 (JEB), 2019 WL 689987, *4 (D.D.C. Feb. 19, 2019)). "The second situation involves an individual whose reputation is damaged as a result of public stigmatization." *Id.* (quoting same).

[2] Plaintiff cites a slew of cases, as well as a concurrence by Judge Silberman, concluding that parties had standing to challenge federal regulations or other actions that had legal consequences. Opp. 17–18 (collecting cases). Those cases are inapposite because the Safety Alert imposed no requirements on Plaintiff.

"As a profit-based enterprise, [Plaintiff] presumably alleges economic harm to its business, rather than stigmatic harms." *Winmar Constr., Inc. v. Iron Kingdom, Inc.*, No. 24-cv-968 (JEB), 2024 WL 3338922, at *4 (D.D.C. July 9, 2024) (citing same); *see* Opp. 16 ("[R]eputational damage … has resulted in significant loss of sales and deprived [Plaintiff] of significant revenue.").

A recent opinion by Judge Boasberg illustrates why Plaintiff's assertions of reputational and economic injury are too "vague and conclusory" to support standing. *Ovanova, Inc. v. U.S. Dep't of Agric.*, No. 24-cv-2769 (JEB), 2025 WL 343118, at *4 (D.D.C. Jan. 30, 2025) (citation omitted). In *Ovanova*, the plaintiffs challenged the manner in which the Department of Agriculture administered a grant program, claiming that canceled or delayed projects inflicted reputational injury that, in turn, caused plaintiffs to lose business opportunities and suffer economic loss. *Id.* at *1, 3. The court rejected those allegations as "insufficiently specific" because the plaintiffs "*d[id] not substantiate* [their losses], explain how their status among their industry will suffer, or explain why any reputational damage would lead to economic loss." *Id.* at *3–4 (emphasis added). Nor did the plaintiffs "provide specific allegations that they have fallen from grace in the eyes of particular prospective clients." *Id.* The court therefore dismissed the complaint for lack of subject-matter jurisdiction. *Id.* at *5.

Plaintiff has similarly failed to substantiate its alleged reputational or economic losses. Plaintiff does not explain, even in general terms, how its reputation has suffered in the opinion of industry members or customers. It also has not offered any clue as to the amount of its supposed economic injury (let alone "substantiate" those losses), nor has it shown that the injury is ongoing. *See id.* at *4. And Plaintiff's explanation why reputational damage would lead to economic loss is vague at best. In a footnote, Plaintiff states that its current distribution agreement is subject to annual negotiation that accounts for various factors, including "sales and market conditions." Opp. 15 n.19 & Ex. A. But that agreement includes a pre-determined flat fee for 2024, so the Safety Alert could not have caused any economic losses for Plaintiff that year. *Id.* Ex. A at Art. VI, ¶ 5. Further, Plaintiff does not claim that any injury allegedly based on the

Safety Alert caused it to negotiate a lower fee for 2025 than it otherwise would have received. Indeed, Plaintiff has not alleged or otherwise described its fee for 2025. Simply put, Plaintiff has failed to allege in a plausible, non-conclusory way how the Safety Alert is injuring it. *See Ovanova*, 2025 WL 343118, at *3–4.

Because Plaintiff's claims of reputational harm are "too vague and unsubstantiated" to demonstrate an injury in fact, Plaintiff has failed to establish standing, and this Court should dismiss the Complaint for lack of subject-matter jurisdiction. *Lillemoe v. U.S. Dep't of Agric.*, No. 15-cv-2047 (DLF), 2020 WL 1984256, at *5 (D.D.C. Apr. 27, 2020) (dismissing suit where plaintiff failed to adequately allege reputational injuries); *Am. Chemistry Council*, 2024 WL 1141465, at *16 (same); *Winmar Constr.*, 2024 WL 3338922, at *4 (same).

### B. Plaintiff's claims are unripe because they do not challenge final agency action

Plaintiff does not dispute that a claim "is not ripe if it is not fit [for judicial review]," and a challenge to agency conduct "is not fit if it does not involve final agency action." Mem. 10 (quoting *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012)); *see* Opp. 19, 33. As FDA's motion to dismiss demonstrated, "a non-binding press release like the Safety Alert is not 'agency action,' much less 'final agency action,'" so Plaintiff's APA and due process claims are unfit and unripe. Mem. 10–16. Although the Court need not consider the ripeness inquiry's "hardship" prong, to the extent it does so, FDA also showed that Plaintiff fails to demonstrate sufficient hardship to overcome the interest in deferring judicial review of a non-final agency press release. *Id.* 16.

#### 1. The Safety Alert is neither "agency action" nor "final agency action"

***No "agency action."*** FDA's motion explained that, under D.C. Circuit precedent, a non-binding agency publication such as the Safety Alert is not a "sanction" or other type of "agency action." Mem. 10–12. Plaintiff offers four responses, each of which mischaracterizes the law or the authorities upon which Plaintiff relies.

*First*, Plaintiff erroneously contends that the Safety Alert meets the APA's definition of "sanction" because it is a "penalt[y]." Opp. 19 (citing 5 U.S.C. § 551(10)). A "penalty," however, is a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws." *Kokesh v. SEC*, 581 U.S. 455, 461–62 (2017); *see Penalty*, Black's Law Dictionary (12th ed. 2024) ("Punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong."). Here, the Safety Alert did not impose any type of punishment, such as assessing a fine, destroying Plaintiff's property, or "taking other compulsory or restrictive action," for any violation of law. 5 U.S.C. § 551(10); *see also* Mem. 10 n.5. Indeed, Plaintiff concedes that FDA has not "requested any market action from Martian Sales" and has not issued a "rule specific to the regulation of kratom." Compl. ¶¶ 34, 49. The contention that FDA's Safety Alert was intended to be a "punishment"—rather than an effort to protect and promote the public health—is unsupported by Plaintiff's conclusory allegations and inconsistent with the Safety Alert's plain wording.

*Second*, Plaintiff overstates case law to claim that "[c]ourts have held that press releases or other public statements may constitute sanctions—*i.e.*, penalties—subject to judicial review." Opp. 19. As FDA explained in its motion, Mem. 11, the cases Plaintiff cites suggest in dicta that judicial review of a non-binding agency statement "might" be available in certain circumstances, *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 457 (4th Cir. 2004) (quoting *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1119 (D.C. Cir. 1988)); *Trudeau v. FTC*, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) (quoting same), *aff'd on other grounds*, 456 F.3d 178 (D.C. Cir. 2006). None of these courts held that a non-binding press release was a sanction or other agency action, and the D.C. Circuit has never overruled *Hearst Radio, Inc. v. FCC*, 167 F.2d 225 (D.C. Cir. 1948). *See, e.g.*, *Trudeau*, 456 F.3d at 189; *Impro Products, Inc. v. Block*, 722 F.2d 845, 849 (D.C. Cir. 1983).

*Third*, Plaintiff cites four law review articles to argue that academics "have long noted FDA's use and abuse of purportedly informal press releases as an instrument to coerce behavior

from [regulated parties].” Opp. 22–23. But FDA did not ask Plaintiff to take any action, let alone attempt to “coerce” it through the Safety Alert. In any event, none of the cited articles suggests that a non-binding press release informing the public about safety risks—and threatening no action—is final agency action subject to judicial review.

*Fourth*, Plaintiff contends that it should be the first exception to *Hearst Radio* because it has “evidence” that (1) FDA was “intent on penalizing” Plaintiff and (2) the Safety Alert was “demonstrably or concededly false.” Opp. 23–24. Yet the allegations in Plaintiff’s Complaint are implausible and fall well short of satisfying either prong. *See* Mem. 10–11. Plaintiff’s responses do not make up the difference.

To begin with, the D.C. Circuit has squarely rejected Plaintiff’s argument that an agency’s recommendation not to use a particular product demonstrates an “intent” to penalize a regulated party. Opp. 24. For example, in *Industrial Safety Equipment*, the D.C. Circuit held that EPA’s issuance of a report warning against the use of certain asbestos-protection respirators, but not prohibiting them, was not agency action. 837 F.2d at 1120–21. The court acknowledged that EPA’s “recommendations” might affect the “choices of industry customers and workers,” but it concluded that “adverse impact alone,” unaccompanied by any “destruction … of property or revocation … of a license,” is insufficient to establish an agency’s intent to penalize a party. *Id.* at 1119, 1121 (quotation marks omitted); *see also Trudeau*, 384 F. Supp. 2d at 291 (“the fact that the press release … describ[es] the plaintiff and his marketing in negative terms” does not establish intent); *Arrow Reliance, Inc. v. Califf*, 2:22-cv-1057, 2022 WL 18027595, at *5 (W.D. Wash. Dec. 30, 2022) (dismissing challenge to FDA press release that recommended against using plaintiff’s cat food and rejecting “highly speculative” allegations regarding the agency’s purported intent to penalize).

Plaintiff also fails to allege any facts or “evidence” suggesting that the Safety Alert is “demonstrably or concededly false.” *Trudeau*, 384 F. Supp. 2d at 289. Here, Plaintiff leans on its inaccurate assertion that “FDA has refused to respond to Martian Sales’s FOIA request” and attributes the agency’s supposed refusal to an imagined lack of documentation regarding the

events discussed in the Safety Alert. Opp. 25, 30–31; *but see supra* n.1. Plaintiff's story runs counter to documents incorporated by reference into the Complaint showing that, prior to this litigation, FDA counsel explained to Plaintiff that the agency's investigation included reviewing, among other things, "the medical examiner's conclusions and autopsy results," which listed the cause of death as "accidental acute Mitragynine intoxication." Heller Decl. Ex. A at 1–2, 4; *see* Mem. 12. Plaintiff complains that FDA's explanation is "inherently unreliable" because it was supposedly "about an anonymous decedent and autopsy report," Opp. 25—ignoring that FDA does not disclose personally identifiable information, such as the decedent's name, that would constitute a clearly unwarranted invasion of personal privacy, *see, e.g.*, 5 U.S.C. § 552(b)(6) (exempting such information from disclosure under FOIA). Even at the motion to dismiss stage, Plaintiff's unsupported statements do not plausibly allege that the Safety Alert is demonstrably false. *Cf. U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("a presumption of regularity attaches to the actions of Government agencies").

Plaintiff also misses the mark in alleging that "FDA possesses no legitimate scientific evidence," Opp. 28, to support the Safety Alert's statement that "OPMS Black Liquid Kratom has been linked to serious adverse health effects, including death," Mem. Ex. 1 at 1. FDA clearly explained: "FDA recently received an adverse event report of a person who died after using OPMS Black Liquid Kratom," and "[t]his is one of many reports of serious adverse events individuals have reported experiencing after consuming OPMS Black Liquid Kratom." Mem. Ex. 1 at 2. Plaintiff does not deny that FDA received adverse event reports regarding OPMS Black Liquid. Nor could it plausibly do so. After all, the OPMS kratom website expressly states that "[t]here have been reports of adverse health effects associated with using kratom products," and "[s]ome publications have suggested kratom may be associated with serious potential side effects, including seizures, liver damage, withdrawal, addiction, abuse, and death." OPMS, *O.P.M.S. Kratom Products*, https://opmskratom.com/opms-black-liquid-auth/ (last visited Feb. 28, 2025). Thus, Plaintiff's conclusory assertion that FDA has "no legitimate scientific evidence" is both wholly unsupported and contrary to the warnings by Plaintiff's own brand.

Lacking any well-pleaded allegations regarding the Safety Alert, Plaintiff points to a handful of articles that it portrays as showing that kratom is "safe" and that "most if not all deaths of kratom users occurred because of comorbidities." Opp. 8–9, 25–26 & Ex. B. None of these publications addressed the events discussed in the Safety Alert or evaluated OMPS Black Liquid—a liquid extract product with "mitragynine and other alkaloid content" that is "multiple times greater than that of raw kratom leaf, resulting in an increased potency …." OPMS, O.P.M.S. Kratom Products, *supra*. Plaintiff cites a small FDA pilot study, Opp. 8, but an article attached to Plaintiff's Complaint explains that the study "doesn't capture the various products marketed to U.S. consumers and associated with kratom, including *kratom extracts* and other substances isolated or synthesized from kratom, … and more research is needed." Compl. Ex. 33[3] at 4 (emphasis added).[4] Accordingly, Plaintiff's citations to literature do not make up for its lack of well-pleaded allegations regarding the Safety Alert.

In sum, Plaintiff "pleads legal conclusions rather than sufficient facts that the Court could consider," and it offers "no reason to conclude that the FDA's issuance of the [Safety Alert] was intended to punish." *Arrow Reliance*, 2022 WL 18027595, at *3. Plaintiff likewise "puts forth no evidence or facts demonstrating that the information contained in the [Safety Alert] is demonstrably or concededly false, it simply asserts that it is." *Id.* at *4. As such, Plaintiff "has failed to demonstrate" that the Safety Alert could be a "sanction," and therefore "FDA's [Safety Alert] does not qualify as agency action." *Id.*

***No "final" agency action.*** Even if FDA's Safety Alert were "agency action" under the APA, Plaintiff's claims still would be unripe because the Safety Alert is not "final agency action." *See*

[3] Kelly Teal, *FDA pilot study on kratom leaf concludes botanica 'is well tolerated,'* SupplySide (Sept. 24, 2024), https://www.supplysidesj.com/herbs-botanicals/fda-pilot-study-on-kratom-leaf-concludes-botanical-is-well-tolerated-.

[4] To support its assertion that the Safety Alert is "false," Plaintiff also asserts that "DEA withdrew its intent to schedule kratom" and "has not taken further action with respect to kratom." Opp. 27–28. DEA continues to list kratom as a "Drug and Chemical of concern," however, and its December 2024 Fact Sheet states that "[a]t high doses, people experience sedative effects"; kratom "consumption can lead to addiction"; its "effects on the body" include "nausea, itching, … constipation, … tachycardia, vomiting, drowsiness, and loss of appetite"; and "[u]sers … have also experienced anorexia, weight loss, insomnia, hepatotoxicity, seizure, and hallucinations." DEA, *Kratom Drug Fact Sheet* (Dec. 2024), https://www.dea.gov/sites/default/files/2025-01/Kratom-Drug-Fact-Sheet.pdf.

Mem. 12–16. The Safety Alert did not reflect the consummation of a decisionmaking process because it did not commit FDA to take any enforcement or other action and because the agency continued to investigate the facts underlying the public statement. *Id.* 13–15. The Safety Alert also did not determine any rights or obligations or create legal consequences; that is, it "had no binding effect whatsoever—not on the agency and not on the regulated community." *Id.* 14–15 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.)). Plaintiff's response mischaracterizes case law and rests on a variety of wholly unsupported arguments. Opp. 29–32; *see id.* 20–22.

**A.** Plaintiff begins by overstating the relevance of three decisions that it characterizes as having "found press releases or the like to constitute final agency action." Opp. 20. None of the cases involved a *non-binding* agency statement like the Safety Alert, so they are not instructive here.

In *CropLife America v. EPA*, for example, EPA issued a "directive" through a press release, announcing that the agency would no longer consider third-party human studies in evaluating the safety of pesticides. 329 F.3d 876, 878 (D.C. Cir. 2003). The D.C. Circuit held that the directive was "a firm rule with legal consequences," *id.* at 882, because it "is binding on petitioners, who are now barred from relying on third-party human studies …, and is binding on the agency because EPA has made it clear that it simply 'will not consider' human studies," *id.* at 881. Similarly, in *National Mining Association v. Jackson*, this Court held that a series of EPA memoranda and guidance that "implemented a change in the permitting process" were final agency action because they "impose[d] unequivocal requirements on the exercise of regulatory authority" and were "being applied in a binding manner." 768 F. Supp. 2d 34, 44 (D.D.C. 2011); *see id.* at 45 (stating that the documents "enacted a change" to a "statutorily established process giv[ing] rise to … legal consequences"). By comparison, FDA's Safety Alert imposed no obligations or restrictions on Plaintiff or FDA, implemented no change to any agency procedure, created no requirements for FDA's exercise of regulatory authority, and bound no one. *See* Mem. 14–16; *infra* pp. 12–14. It simply warned consumers about serious adverse health effects

associated with Plaintiff's product. Thus, *CropLife* and *National Mining Association* do not support Plaintiff's argument that the Safety Alert is final agency action.

Plaintiff also spills much ink in falsely equating the Safety Alert and the Consumer Product Safety Commission's decision to publish, over a plaintiff's objection, a report about the death of an infant who used the plaintiff's product. *See* Opp. 21–22, 31–32 (citing *Doe v. Tenenbaum*, 127 F. Supp. 3d 426 (D. Md. 2012), *rev'd on other grounds sub nom. Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014)). But *Doe v. Tenenbaum* is limited to a specific statutory scheme, not at issue here, requiring CPSC to publish certain reports of harm after providing the identified manufacturer with notice and an opportunity to object. *See* 127 F. Supp. 3d at 460 (discussing 15 U.S.C. § 2055a(c)).

In *Doe*, the court found final agency action because "the Commission's decision [to publish the report] perfected an adversarial process" in which the plaintiff was required to file an objection supported by "evidence," and the Commission made a "legal determination that Plaintiff failed to carry the burden of proof and that the report otherwise satisfied the statutory and regulatory preconditions for publication." 127 F. Supp. 3d at 463. The court emphasized that "[t]hese conditions"— "consummation of an adversarial process" and determination of the plaintiff's "right … to prevent a materially inaccurate report from" being published—"are not present whenever the government plans to publish controversial research or completes a multistep administrative process." *Id.* at 462, 464.

In stark contrast to *Doe*, here no adversarial process took place before FDA made its statement, nor does the FDCA require such a process in this context. Because the Safety Alert did not consummate an agency decisionmaking process or impose legal consequences, it was not final agency action.

**B.** Plaintiff's arguments regarding *Bennett v. Spear*'s two-prong finality test fare no better. Plaintiff asserts that FDA consummated a decisionmaking process because (i) the Safety Alert states that "OPMS Black Liquid Kratom has been linked to serious adverse health effects, including death," and (ii) the agency has allegedly "stonewalled," by purportedly "refus[ing] to

provide any documentation" in response to Plaintiff's FOIA request. Opp. 30; *but see supra* p. 2 n.1. Plaintiff contends that these allegations show that "FDA has made up its mind" about OPMS Black Liquid, *id.*, as compared to the situation in *Holistic Candlers*, where the D.C. Circuit held that FDA's warning letters were not final in part because the agency "'expressed no such position, unequivocal or otherwise, regarding its authority to regulate ear candles without taking further administrative action,'" *id.* 30–31 (quoting *Holistic Candlers*, 664 F.3d at 945).

Plaintiff is wrong on all counts. At the outset, Plaintiff is incorrect that the consummation-of-process prong is satisfied whenever an agency forms an opinion about something. As already explained, *see supra* p. 7, an agency's recommendation that consumers not use a product because of safety risks is not even "agency action," let alone "final agency action" reflecting a completed decisionmaking process. *See also Invention Submission*, 357 F.3d at 457 (holding that the content of an advertising campaign alerting consumers to invention promotion scams "was not the consummation of any decisionmaking process"). That is because an agency's publication of a safety recommendation, much like an agency's preliminary view that a company may have violated the law, does not commit the agency to "pursue enforcement action." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 730, 732 (D.C. Cir. 2003). Nor does it go through "the steps required under the statutory and regulatory scheme" for the statement "to have any legal consequences." *Id.*

Just so here. The Safety Alert does not commit FDA to take any enforcement or other action, nor was it the result of a notice-and-comment or adjudicatory process that could give rise to a binding rule or order. *See id.*; *Arrow Reliance*, 2022 WL 18027595, at *4 (holding that FDA did not consummate a decisionmaking process where press release "merely advise[d] consumers not to feed certain lots of Darwin's products to its pets" and explaining that the fact "that FDA could undertake an enforcement action underscores the lack of finality").

Moreover, far from reflecting a settled agency position, the Safety Alert expressly states that FDA was still "investigating" the underlying adverse events. Mem. Ex. 1 at 2. Indeed, the agency subsequently requested additional information from Plaintiff and asked it to "identify" any

statements in the Safety Alert with which it "disagree[d]." Heller Decl. Ex. A at 2–3; *see also* Mem. 14. Plaintiff thus fails to satisfy *Bennett v. Spear*'s consummation-of-process prong.

**C.** Plaintiff's two arguments regarding the legal-consequences prong are likewise unavailing. Plaintiff first ignores on-point authority to argue that the "practical effect of [the Safety Alert] on the market" for OPMS Black Liquid demonstrates finality. Opp. 32; *see id.* 31 ("[T]he practical effect" is that the Safety Alert "is causing reputational damage to [Plaintiff's] brand and goodwill, which has resulted in significant loss of sales and deprived [it] of significant revenue.") (quotation marks omitted). But as FDA already showed, *see* Mem. 15, the D.C. Circuit has rejected the notion that these types of "practical consequences," such as reputational harm or a potential loss of sales, are sufficient to state a claim under the APA, *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 12 (D.C. Cir. 2015); *Reliable Automatic Sprinkler*, 324 F.3d at 732; *see Holistic Candlers*, 664 F.3d at 944 n.5; *Indus. Safety Equip.*, 837 F.2d at 1119, 1121. Plaintiff's citation to *National Mining Association* does not aid its cause. Opp. 29–30. In that case, this Court explained that EPA's guidance had the "practical impact" of changing the agency's permitting process, giving rise to "*legal* consequences" for applicants and the agency. 768 F. Supp. 2d at 45 (emphasis added). This Court further noted that the guidance was "being treated and applied in practice as if it were final" and "binding." *Id.* Here, however, Plaintiff's claimed "practical effect" is merely economic or reputational harm, not any change in the legal "status quo." *See id.* Absent "a *legal* consequence," the Court "lack[s] the power to review" the Safety Alert. *Joshi*, 791 F.3d at 12 (emphasis in original).

Next, Plaintiff contends that the Safety Alert "determined [FDA's] own rights and obligations" because FDA's "decision to publish the [Safety Alert]" demonstrates that the agency "decided that the law required or entitled it to publish the [Safety Alert]." Opp. 32 (citation omitted). This is a remarkable proposition. If accepted, "final agency action" would encompass virtually everything an agency does. Just as a press release would be final agency action because the agency concluded it could lawfully issue the press release, a warning letter or request for voluntary corrective action would be final agency action so long as the agency believed it had

authority to send or request it. *But see Holistic Candlers*, 664 F.3d at 942; *Reliable Automatic Sprinkler*, 324 F.3d at 733. The same would be true of any guidance document or preliminary report. *But see Indus. Safety Equip.*, 837 F.2d at 1119; *Joshi*, 791 F.3d at 12. The APA, however, "is not so all-encompassing as to authorize [courts] to exercise 'judicial review over everything done by an administrative agency.'" *Indep. Equip. Dealers*, 372 F.3d at 427 (quoting *Hearst Radio*, 167 F.2d at 227).

In contrast to Plaintiff's assertions, the Safety Alert did not bind FDA or its employees in any way. It committed the agency to no action and created no requirements for the agency to follow. Nor does Plaintiff contend that the Safety Alert affected its legal rights. Accordingly, the Safety Alert was not final agency action, and Plaintiff's claims are unfit for review and therefore unripe.[5] The Court should dismiss the Complaint for lack of subject-matter jurisdiction.

**2. Plaintiff has not suffered hardship sufficient to outweigh the interest in deferring judicial review**

Plaintiff misunderstands FDA's motion as "suggest[ing] that even if the [Safety Alert] is final agency action, the Court should still not review it because [Plaintiff] has not suffered [sufficient] hardship." Opp. 33. To the contrary, we stated that the lack of final agency action means that the Court need not consider the rest of the ripeness inquiry—a proposition Plaintiff does not dispute. We also stated that, if the Court nonetheless chooses to engage in further analysis, Plaintiff has not demonstrated sufficient hardship to overcome the interest in deferring judicial review of the Safety Alert. Mem. 16.

Aside from that misunderstanding, Plaintiff does not point to any "significant 'concrete harm'" that it would suffer absent immediate judicial review, nor does it dispute that the Safety Alert 'does not require it to do anything or to refrain from doing anything.'" *Id.* (quoting *Trump*

[5] Plaintiff once again insists that the Safety Alert is final agency action because FDA has allegedly "refused to provide any documentation" in response to Plaintiff's FOIA request and it has "'no other adequate remedy in a court." Opp. 30 (quoting 5 U.S.C. § 704). As FDA's motion explained, however, "[i]f Plaintiff is dissatisfied with the pace of FDA's response to its FOIA request, its remedy lies in FOIA, not the APA." Mem. 15 (citing *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (dismissing APA claim because FOIA provided adequate remedy)).

*v. New York*, 592 U.S. 125, 134 (2020)); *see* Opp. 33 (arguing that because it alleges that the Safety Alert was issued as a punishment, is false, and is final agency action, Plaintiff's harm is "self-evident"). Instead, Plaintiff asserts, without citation, that judicial review is necessary "to prevent the agency from evading review and circumventing required procedures under the APA." Opp. 33.[6] Plaintiff's circular argument establishes no hardship and thus cannot overcome the institutional interests in deferring judicial review of non-final agency conduct.

## II. Even if the Court has subject-matter jurisdiction, the Complaint alleges no plausible claim

Count I fails to state a claim under the APA because, as discussed above, it does not challenge "agency action" or "final agency action." *See supra* Part I.B.1; Mem. 17. Count II fails to state a due process claim for two distinct reasons. First, Plaintiff does not properly allege a deprivation of a property or liberty interest because it cannot satisfy the "stigma-plus rule," which requires a party asserting a reputational injury to also show that the government either (a) deprived it of a benefit to which it has a legal right or (b) imposed a stigma so severe that the party cannot pursue a chosen trade or business. Mem. 17–21. Second, the Safety Alert is not final agency action and has no legal consequences, so Plaintiff was denied no process due under the Fifth Amendment. *Id.* 17, 21–22.

### A. Plaintiff's claimed reputational injuries fail as a matter of law

Plaintiff does not contest FDA's analysis of the stigma-plus case law but instead claims that it is based on "a false premise." *Compare* Mem. 18–20 *with* Opp. 34. According to Plaintiff, the stigma-plus rule does not apply because Plaintiff challenges "a regulatory sanction" and its alleged harms are not "purely reputational." Opp. 34. Here, Plaintiff *appears* to argue that any harm purportedly caused by the Safety Alert (*i.e.*, by the "sanction") automatically constitutes a deprivation of a protected interest. *See id.* 36 ("[Plaintiff]'s allegation that the reputational injury

[6] Plaintiff does not dispute that it could request internal agency review of the Safety Alert under 21 C.F.R. § 10.75. *See* Mem. 15.

was caused by a sanction that is final agency action establishes a claimed deprivation of property or liberty.").

Whatever Plaintiff's precise theory, it fails. The Supreme Court has made clear that a plaintiff cannot state a constitutional claim for "damage [that] flows from injury caused by the defendant to a plaintiff's reputation." *Siegert v. Gilley*, 500 U.S. 226, 234 (1991). Thus, in *General Electric Co. v. Jackson*, the D.C. Circuit held that GE did not allege a deprivation of a property interest where the company argued that "[EPA's order] harms [GE]'s reputation, and the market, in turn, devalues its stock, brand, and credit rating." 610 F.3d 110, 113 (D.C. Cir. 2010). The court explained that such "consequential injuries" flowing from reputational injury do not constitute a deprivation of a property interest. *Id.* at 113–14. Much like GE, Plaintiff "alleges that the [Safety Alert] caused reputational damage to its brand and goodwill, which has resulted in significant loss of sales and deprived it of significant revenue." Opp. 16; *see id.* 31 (similar). Because Plaintiff's asserted injuries flow from harm to its reputation, they do not represent a deprivation of a protected property interest, and they are "insufficient to merit Due Process Clause protection." *Gen. Elec. Co.*, 610 F.3d at 113–14; *see* Mem. 18–20 (collecting cases).

Plaintiff ignores the distinction between reputational injuries and protected interests in arguing that *General Electric Co.* supports judicial review of its due process claim. Plaintiff asserts that GE "was provided a right to judicial review to the extent that EPA issued any sanction," Opp. 35, implying that here Plaintiff has a right to judicial review because it alleges that the Safety Alert was a sanction. But due process did not entitle GE to judicial review as to *all* the financial losses it incurred—only those that implicated a protected interest. Thus, due process demanded judicial review before GE incurred costs of compliance or noncompliance, but not for GE's losses stemming from reputational injuries. 610 F.3d at 113–14, 117–18. Here, Plaintiff's alleged harms all flow from reputational injuries, *see* Opp. 16, 31, so due process does not require judicial review.

Plaintiff also misstates the significance of two D.C. Circuit decisions, *Trifax Corp. v. District of Columbia* and *Industrial Safety Equipment*. Plaintiff appears to argue that the former

holds that reputation is a protected interest and that the latter's relevance is limited to rejecting a due process claim for lack of final agency action. Opp. 36–37. Not so. Both cases expounded on, among other things, the type of "broad preclusion" from a chosen trade that a plaintiff could show to satisfy the stigma-plus rule. *Trifax Corp. v. Dist. of Columbia* 314 F.3d 641, 644 (D.C. Cir. 2003); *see Indus. Safety Equip.*, 837 F.2d at 1122. Plaintiff falls well short of satisfying this standard. It does not dispute that OPMS Black Liquid continues to be sold, let alone odes it allege facts indicating that the Safety Alert "altered [Plaintiff's] status in a tangible way," with "harms approaching, in terms of practical effect, formal exclusion from a chosen trade or profession." *Trifax*, 314 F.3d at 644–45. Nor has Plaintiff alleged that the Safety Alert has or will "effectively put [it] out of business," *id.* at 644, or "rendered valueless" Plaintiff's interest in OPMS Black Liquid, *Indus. Safety Equip.*, 837 F.2d at 1122. Plaintiff therefore cannot establish that it was deprived of a protected property interest, and its due process claim fails.

### B. The Safety Alert is not final agency action and does not implicate due process

Plaintiff does not contest that it can state a due process claim only if the Court determines that the Safety Alert is final agency action. *See* Opp. 34–37; *see also* Mem. 21–22. As discussed above, the Safety Alert is not final agency action, and therefore Plaintiff was denied no process due under the Fifth Amendment. Accordingly, the Court should dismiss Plaintiff's due process claim in Count II of the Complaint.

## CONCLUSION

The Court should dismiss the Complaint because Plaintiff lacks Article III standing and its claims are prudentially unripe. Even if the Court has subject-matter jurisdiction, the Complaint fails to state a claim under the APA or the Due Process Clause and should therefore be dismissed.

Dated: February 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General,
Civil Division

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director, Civil Litigation

HILARY K. PERKINS
Assistant Director

*/s/ David H. Hixson*
DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel
U.S. Department of Health and Human Services

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and Human Services
Chief Counsel
U.S. Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002